## IN THE UNITED STATES DISTRICT COURT FOR THE
### EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NICHOLAS MARTINO | : |
| AND | : |
| NICOLE MARTINO | : |
| AND | : |
| MARY BETH MARTINO | : |
| vs. | : |
| RICHARD CRAFT | : |
| AND | :    CIVIL ACTION NO. 02-CV-4633 |
| JOHN HAMMERSCHMIDT | : |

## ORDER

AND NOW this           day of                    , 2003, upon consideration of

defendants, Richard Craft and John Hammerschmidt's, motion pursuant to Federal Rule of Civil

Procedure 12(b)(1), and any response thereto, it is hereby ORDERED AND DECREED that said

motion is GRANTED. The Court further directs that this matter be transferred to the state court for

all further proceedings.

By the Court:

_____

HONORABLE THOMAS O'NEILL, JR.

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NICHOLAS MARTINO | : |
| AND | : |
| NICOLE MARTINO | : |
| AND | : |
| MARY BETH MARTINO | : |
| vs. | : |
| RICHARD CRAFT | : |
| AND | :     CIVIL ACTION NO. 02-CV-4633 |
| JOHN HAMMERSCHMIDT | : |

## DEFENDANTS, RICHARD CRAFT AND JOHN HAMMERSCHMIDT'S, MOTION TO DISMISS FOR LACK OF JURISDICTION OVER THE SUBJECT MATTER PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1)

Defendants, Richard Craft and John Hammerschmidt, by and through their attorneys, Bennett, Bricklin & Saltzburg, LLP, do hereby request this Honorable Court enter the attached order transferring this matter to the state court for all further proceedings on the basis of lack of jurisdiction over the subject matter. In support of said motion, defendants aver as follows:

1.     On or about July 12 , 2002, plaintiffs instituted the instant action in the United States District Court for the Eastern District of Pennsylvania, arising out of a waverunner accident that occurred July 15, 2000 on the Sassafras River in Maryland. In their complaint, plaintiffs allege that as this accident occurred on a navigable waterway, this Honorable Court's jurisdiction is founded solely upon federal admiralty jurisdiction pursuant to Article III, Section 2 of the United States Constitution and 28 U.S.C. §1333. (See a true and correct copy of plaintiffs' complaint attached hereto as Exhibit "A".)

2.     Defendants believe that there is a question as to whether this Court has subject matter jurisdiction over this action.

3.     A challenge to the Court's subject matter jurisdiction may be raised at any time.  If a district court determines it lacks subject matter jurisdiction, it may remand the case to state court at any time before final judgment.  Gould Elect., Inc. vs. U.S., 2001 U.S. Dist. LEXIS 7438 (D.Pa., June 6, 2001 filed); Hoyt vs. Edge, 1997 U.S. Dist. LEXIS 8846 (D.Pa., June 18, 1997, decided).

4.     Not only may the lack of subject matter jurisdiction be raised at any time, it cannot be waived and the Court is obliged to address the issue on its own motion.  See Carpet Group In'l vs. Oriental Rug Importers Assoc'n, Inc., 227 F.3d 62, 69 (3rd Circ. 2000)

5.     A party seeking to invoke federal admiralty jurisdiction over a tort claim must satisfy conditions both of location and of connection with maritime activity.

6.     It is not in dispute that the accident in question occurred on a navigable waterway as required under Article 3, Section 2 of United States Constitution and 28 U.S.C. §1333.

7.     The "connection" or "nexus" prong of the test requires a court to determine "whether the incident has a potentially disruptive impact on maritime commerce" and whether "the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity." Sisson vs. Ruby, 497 U.S. 358, 360, 111 L.Ed. 2d 292, 110 S.Ct. 2892 (1990).

8.     In the instant case, it is not in dispute that the vessels being operated in question were to privately owned and operated waverunners.  It is also not in dispute that after the accident at issue occurred, the operators of both waverunners were able to negotiate their vessels back to the private dock from whence they came.  Once back to shore, the injured plaintiff, Nicholas Martino, was able to be removed from the waverunner in question.  Local police were summoned to investigate.  The investigation did not require closure of the waterway, access to the waterway or other disruption of travel on the navigable waterway in question.

9.    Under the "two prong analysis test", employed by the Court in determining subject matter jurisdiction, the facts of this case clearly establish that the collision between the two waverunners had no relationship to or potential to effect maritime commerce.

**WHEREFORE,** defendants Richard Craft and John Hammerschmidt hereby move this Honorable Court to enter the attached order granting defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) on the basis of lack of jurisdiction over the subject matter and directing that this matter be transferred to state court for all further proceedings.

**Respectfully submitted,**
**BENNETT, BRICKLIN & SALTZBURG, L.L.P.**

By:    _____

**PAMELA A. CARLOS, ESQUIRE**
**Attorney for Defendants**
**Richard Craft and John Hammerschmidt**

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NICHOLAS MARTINO | : | |
| AND | : | |
| NICOLE MARTINO | : | |
| AND | : | |
| MARY BETH MARTINO | : | |
| vs. | : | |
| RICHARD CRAFT | : | |
| AND | : | CIVIL ACTION NO. 02-CV-4633 |
| JOHN HAMMERSCHMIDT | : | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS, RICHARD CRAFT AND JOHN HAMMERSCHMIDT'S, MOTION TO DISMISS FOR LACK OF JURISDICTION OVER THE SUBJECT MATTER PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1)

### A. STATEMENT OF THE FACTS:

Plaintiffs have instituted the instant action arising out of a waverunner accident that occurred on July 15, 2000 on the Sassafras River in Maryland. In their complaint, plaintiffs allege that as the accident occurred on a navigable waterway that this Honorable Court's jurisdiction is founded solely upon federal admiralty jurisdiction pursuant to Article 3, Section 2 of the United States Constitution and 28 U.S.C. §1333. (See attached a true and correct copy of plaintiffs' complaint marked as Exhibit "A".)

It is not in dispute that the waverunners involved in this loss were privately owned and not leased waverunners. They were used by plaintiff, Nicholas Martino, and defendant, Richard Craft, on the date of loss having been launched from a private dock owned by the defendants on the Sassafras River in Maryland. After the collision occurred between the vessels, both operators were able to navigate the waverunners back to the defendants' dock/residence. After arriving at the scene

plaintiff, Nicholas Martino, was assisted off the waverunner. A local ambulance unit arrived to render medical assistance. State police were summoned to the scene and investigated same. A State of Maryland Watercraft Accident Report was issued. (See attached a true and correct copy of the accident report, marked as Exhibit 'B'). There is no evidence that the investigation required summoning of the Coast Guard or otherwise interfered with commerce or potentially interfered with commerce upon the Sassafras River in any way. There is no evidence that any debris or evidence from the accident was generated or needed to be retrieved from the open waters. The vessels were intact and operational after the accident. Medical attention was rendered by a local ambulance group and the plaintiff was airlifted from an adjacent private property to a hospital in Baltimore. There is no evidence that any medical or rescue effort involved entry upon the Sassafras River.

## B. LEGAL ARGUMENT:

Defendants believe there is a question as to whether this Court has subject matter jurisdiction over the instant action.

A challenge to the Court's subject matter jurisdiction may be raised at any time. Gould Elect. Inc. vs. U.S., 2001 U.S. Dist. LEXIS 7438 (D.Pa., June 6, 2001 filed). If a district court determines it lack subject matter jurisdiction, it may remand the case to state court at any time before final judgment. Hoyt vs. Edge, 1997 U.S. Dist. LEXIS 8846 (D.Pa., June 19, 1997, decided). Not only may the lack of subject matter jurisdiction be raised at any time, it cannot be waived and the Court is obliged to address the issue on its own motion. See Carpet Group Internat'l vs. Oriental Rug Importers Assoc'n, Inc., 227 F.3d 62, 69 (3rd Circ. 2000).[1]

---

[1] This matter is currently pending before the Court for disposition in its September 2003 trial pool. Defendants recognize the fact that this motion is being filed shortly before anticipated trial. In researching the area of damages law that would apply in this matter, it became apparent that under the facts and circumstances of this loss the question of subject matter jurisdiction was in question.

The seminal case in Pennsylvania regarding the issue of subject matter jurisdiction in an admiralty matter is Calhoun vs. Yamaha Motor Corporation, 216 F.3d 338, 2000 U.S. App. LEXIS 144 79, 2000 A.M.C. 1863 (D.Pa., June 23, 2000, filed.) In Calhoun, the Court recounted the history of the exercise of admiralty jurisdiction. Before 1972, the Supreme Court adhered to the "locality test" which authorized the exercise of admiralty jurisdiction in all matters in which the incident giving rise to the cause of action occurred on the navigable waters of the United States. Calhoun, Id., citing E. G. Victory Carriers, Inc. vs. Law, 404 U.S. 202, 205 N.2, 30 L.Ed. 2nd 383, 92 S.Ct. 418 (1971). In Executive Jet Aviation, Inc. vs. City of Cleveland, 409 U.S. 249, 34 L.Ed. 2nd 454, 93 S.Ct. 493 (1972) the Court abandoned the use of the locality test in the case concerning an airplane that crashed into Lake Erie shortly after takeoff. The Court replaced the locality test with an analysis that required a court to determine whether the incident in question bore a "significant relationship to traditional maritime activity". See Id. at 268. Holding that an airplane crash did not bear such a relationship to traditional maritime activity, the Court held that the exercise of admiralty jurisdiction was not appropriate. See Id.

The Court further explained the Executive Jet standard in Richardson vs. Foremost Insurance Co., 457 U.S. 668, 73 L.Ed. 2nd 300, 102 S.Ct. 2654 (1982). In Richardson, two boats that were being used for recreational purposes but had never been utilized for commercial purposes had collided on the Miamite River in Louisiana,. See, Id. at 669. In Richardson, the Court noted that lack of nexus to commercial activity and, citing the need for uniform rules of conduct and the fact that a pleasure boat collision could potentially impact maritime commerce, the Court held "the negligent operation of a vessel on navigable waters had a sufficient nexus to traditional maritime

---

Accordingly, upon recognizing the potential validity of said issue, it was incumbent upon defendants to raise this issue before the Court.

activity to sustain admiralty jurisdiction. Id. at 647. Although it appeared to sanction the expanded

use of admiralty jurisdiction, the Court cautioned that "not every accident in navigable waters that

might disrupt maritime commerce will support admiralty jurisdiction." Id. at 675 N.5.

The Court has continuously directed that in examining an incident's nexus to maritime

commerce for the purpose of admiralty jurisdiction, a court must look not only to the specific impact

of the particular incident had on such commerce, but to "the potential impact of the incident by

examining its general character." Sisson v. Ruby, 497 U.S. 358, 111 L.Ed.2d 292, 110 S.Ct. 2892

(1990).

In Calhoun, the plaintiff's decedent was operating a Yamaha Wave Jammer at the time she

was killed following a collision with an anchored vessel. The Court found that under the

circumstances of the Calhoun matter, so long as the incident in question and the vehicles utilized

therein, bore some relationship to traditional maritime activity and could in any way impact upon

the flow of maritime commerce, admiralty jurisdiction was property. In Calhoun, the Court noted

that the vessel which the plaintiff's decedent struck could have been a commercial boat, or the

ensuing investigation into the crash could have made commercial navigation in and around the

marina difficult. Calhoun at 19.

The facts in the instant matter are clearly distinguishable from those in Calhoun, and thus

give rise to the question of whether this matter falls within an admiralty jurisdiction. First, the

waverunners at issue were owned privately and were not rented instruments or used for commercial

transport. After the accident occurred, both operators were able to navigate the waverunners back

to shore. There is no evidence that any debris resulted from the crash or that any debris needed to

be extracted from the water. There is no evidence that the incident required entry upon the Sassafras

River to perform medical or investigative functions. Moreover, as the accident occurred less than

a half a mile from the private home/dock in question, it is a tenuous argument at best that commercial navigation could have been effected as a result of the loss.

Under the standard evoked in <u>Calhoun</u>, while it is not in dispute that the accident in question occurred on a navigable waterway, defendants maintain that the plaintiffs have failed to meet the second "prong" of the subject matter jurisdiction test, i.e. that the incident in question <u>bears some relation to traditional maritime activity and could, in any way, impact upon the flow of maritime commerce</u>.

In researching this matter, defendants note the opinion in <u>Szollosy vs. Hyatt Corporation</u>, 208 F. Supp. 2nd 205, 202 U.S. Dist. LEXIS 19593, 2002 A.M.C. 1432 which cites the Pennsylvania case of <u>Rosen vs. Brodie</u>, 1995 U.S. Dist. LEXIS 2907, Civ. A. 94-3501, 1995 Wl. 102 700 at *2 to stand for the proposition that jet ski collisions on navigable waters constitute activity sufficient to confer admiralty jurisdiction. Defendants respectfully disagree. In <u>Rosen</u>, the underlying loss involved a collision between two operators of jetskis in the Barnegat Bay of New Jersey. There the plaintiffs brought a negligence action alleging both diversity of citizenship, 28 U.S.C. §1332 and admiralty and maritime jurisdiction, 28 U.S.C. §1333.[2] The Court was asked to rule upon a motion to dismiss plaintiff's claim for loss of consortium only. The Court was not called upon and did not rule upon the appropriateness of subject matter jurisdiction .

---

[2] In the instant action it is not in dispute that there is no diversity of citizenship between the parties. They are all residents of Pennsylvania. Moreover, diversity of citizenship was not cited by the complaint as the basis for this Court's jurisdiction of this matter.

## C. CONCLUSION:

For the aforementioned reasons, defendants respectfully request this Honorable Court enter the attached order granting its motion pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of jurisdiction over subject matter and direct that this action be transferred to state court for further proceedings.

BENNETT, BRICKLIN & SALTZBURG, L.L.P.

By: _____

PAMELA A. CARLOS, ESQUIRE
Attorney for Defendants
Richard Craft and John Hammerschmidt

## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NICHOLAS MARTINO | : |
| AND | : |
| NICOLE MARTINO | : |
| AND | : |
| MARY BETH MARTINO | : |
| vs. | : |
| RICHARD CRAFT | : |
| AND | :    **CIVIL ACTION NO. 02-CV-4633** |
| JOHN HAMMERSCHMIDT | : |

### CERTIFICATE OF SERVICE

I, Pamela A. Carlos, Esquire, hereby certify that a true and correct copy of the foregoing

Motion pursuant to Federal Rule of Civil Procedure 12(b)(1) has been served this date upon all

interested counsel by way of hand-delivery addressed as follows:

Darin McMullen, Esquire
**Pelino & Lentz, P.C.**
One Liberty Place
1650 Market Street, 32nd Floor
Philadelphia, PA 19103-7393

BENNETT, BRICKLIN & SALTZBURG, L.L.P.

By:  _____

**PAMELA A. CARLOS, ESQUIRE**
**Attorney for defendants,**
**Richard Craft and John Hammerschmidt**

## **VERIFICATION**

I, Pamela A. Carlos, Esquire, hereby verify that I am the attorney for Richard Craft and John Hammerschmidt, defendants herein, and that the facts set forth in the foregoing Motion pursuant to Federal Rule of Civil Procedure 12(b)(1) are true and correct to the best of my knowledge, information and belief. I understand that false statements made herein are subject to the penalties of 18 Pa. C.S. Section 4904 relating to unsworn falsifications to authorities.

_____
PAMELA A. CARLOS, ESQUIRE

**Exhibit A**

07/25/2002 12:45 FAX 6103258889          STATE FARM INS.                    ☑002

## SUMMONS IN A CIVIL ACTION

### UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NICHOLAS MARTINO; NICOLE MARTINO, a minor, by Marybeth Martino, her parent and natural guardian and MARYBETH MARTINO<br><br>v.<br><br>RICHARD CRAFT and JOHN HAMMERSCHMIDT | CIVIL ACTION NO. 02-4633<br><br>TO: (NAME AND ADDRESS OF DEFENDANT)<br>   John Hammerschmidt<br>   7 Greenbriar Lane<br>   Paoli, PA   19301 |

### YOU ARE HEREBY SUMMONED and required to serve upon

Plaintiff's Attorney (Name and Address)

Howard A. Rosenthal, Esq.
Pelino & Lentz, PC
One Liberty Place, 32nd flr.
Philadelphia, PA 19103

an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

| | |
|---|---|
| Michael E. Kunz, Clerk of Court | Date: 7/12/02 |
| (By) Deputy Clerk<br><br>TRICIA A. JONES | |



EXHIBIT
March no 5
7-21-03 SM

07/25/2002 12:45 FAX 6103258889              STATE FARM INS.                                    ☒003



# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Nicholas Martino,                                  :
5 Gregory Lane                                     :        Civil Action No.
Newtown Square, PA    19073                         :
                                                   :        02cv4633
            and                                    :
                                                   :
Nicole Martino, a minor, by                        :
Marybeth Martino, her parent and                   :
natural guardian                                   :
5 Gregory Lane                                     :
Newtown Square, PA    19073                         :
                                                   :
            and                                    :
                                                   :
Marybeth Martino                                   :
5 Gregory Lane                                     :
Newtown Square, PA    19073                         :
                                                   :
                Plaintiffs,                        :
                                                   :
        v.                                         :
                                                   :
Richard Craft                                      :
659 Andover Road                                   :
Newtown Square, PA    19073                         :
                                                   :
            and                                    :
                                                   :
John Hammerschmidt                                 :
7 Greenbriar Lane                                  :
Paoli, PA    19301                                 :
                                                   :
                Defendants.                        :

## COMPLAINT

        Plaintiffs, Nicholas Martino, Nicole Martino, a minor,

by Marybeth Martino, her parent and natural guardian, and

Marybeth Martino, in her own right, by their attorneys, bring

this action against defendants, and aver as follows:

I.    STATEMENT OF JURISDICTION AND VENUE

        1.    Jurisdiction is founded on this Court's federal

admiralty jurisdiction pursuant to Article III, Section 2 of the

United States Constitution and 28 U.S.C. § 1333 as the events or

omissions giving rise to plaintiffs' claims occurred on the

Sassafras River, a navigable waterway, and were significantly related to traditional maritime activity.

2.    Venue is proper in the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1391(b) in that both defendants reside in this judicial district and in the Commonwealth of Pennsylvania.

## II.   THE PARTIES

3.    Nicholas Martino ("Martino") is an adult individual residing at 5 Gregory Lane, Newtown Square, Pennsylvania 19072.

4.    Nicole Martino ("Nicole") is a minor residing with her parent and natural guardian, Marybeth Martino, at 5 Gregory Lane, Newtown Square, Pennsylvania 19073.

5.    Marybeth Martino is an adult individual residing at 5 Gregory Lane, Newtown Square, Pennsylvania 19072 and is the wife of Nicholas Martino.

6.    Richard Craft ("Craft") is an adult individual residing at 659 Andover Road, Newtown Square, Pennsylvania 19073.

7.    John Hammerschmidt ("Hammerschmidt") is an adult individual residing at 7 Greenbriar Lane, Paoli, Pennsylvania 19301.

## III.  FACTS

8.    On or about July 15, 2000, Craft and Hammerschmidt were co-owners of a vacation residence located on the Sassafras River in or near Galena, Maryland.

9.    The Sassafras River is used, or is susceptible of being used, as a highway for commerce over which trade and travel are or may be conducted and is, therefore, a navigable waterway.

10.   Located at the residence were two water craft

-2-

known as "wave runners" which Hammerschmidt owned and had the right and ability to permit or prohibit others including Craft from using.

11.  At all relevant times, Hammerschmidt knowingly permitted Craft and others to use the wave runners.

12.  On July 15, 2000, Martino, his wife, Marybeth, and their daughter, Nicole, were visiting the defendants' vacation residence as invited guests of Craft.

13.  At approximately 4 to 5 p.m., at Craft's suggestion, Craft, his son, Martino and Nicole took the wave runners out for a ride on the Sassafras River.  Martino and Nicole were riding on one of the wave runners, while Craft and his son were riding on the other.

14.  At all relevant times, Craft had a duty to persons traveling on the Sassafras River to operate his wave runner in a safe manner and take all due care to avoid injuring others by his operation of the wave runner.

15.  While operating his wave runner, Craft, without prior warning, drove directly into Martino's wave runner injuring both Martino and his daughter, Nicole.

16.  Following the impact, Martino had to drive his wave runner with his leg broken and bleeding severely for approximately five minutes until he could reach the shore.

17.  After Martino reached shore, an EMT team performed emergency treatment until Martino was taken by medivac helicopter to the R. Adams Crowley Shock Trauma Center in Baltimore, Maryland.

18.   Nicole was taken to a local hospital by her mother.

19.   Martino sustained severe, permanent, painful and disabling physical injuries, including:

a.   a type three open tibia fracture of the left leg which, to date, has, required 23 surgical procedures and multiple, extended hospital stays for treatment which has included the placing, setting and re-setting an external fixator; extensive muscle grafting; reconstructive surgery and skin grafting; bone graft surgery; the removal of additional destroyed muscle; installation of a rod; the insertion of a port in Mr. Martino's chest for antibiotic treatment and extensive rehabilitation;

b.   the permanent destruction of otherwise healthy muscle and skin tissue;

c.   the onset of a heavy staph infection and chronic osteomyelitis which, if the infection develops a resistance to antibiotics, may require amputation of Martino's left leg;

d.   internal bleeding and aggravation of the staph infection;

e.   a loss of flexibility in Martino's ankle, foot and calf, requiring him to walk in a labored fashion and the shortening of one of Martino's legs, which requires him to wear custom lifts;

f.   permanent scarring; and

g.   constant pain in Martino's leg.

-4-

20.   Martino's physical injuries are permanent in nature and are continuing.

21.   Martino's physical injuries have directly limited, if not eliminated, his ability to remain physically active.

22.   As a direct and proximate result of the accident, Martino has had to rely on a wheelchair or crutches to walk, cannot engage in many physical activities which he had previously enjoyed, such as exercising, playing in an adult soccer league and performing household chores, which he must now hire someone to do.

23.   Martino's doctors have considered him disabled since the date of the accident and his injuries presently restrict his movement which currently limits his ability to work.

*24.   Because injuries from the accident precluded the international travel required by his employer, Martino lost his job and current and future salary, bonus opportunities and options.

25.   As a further direct and proximate result of the accident, Martino has suffered a loss of past and future earnings.

26.   Martino's physical injuries are permanent in nature and his damages are continuing.

27.   Moreover, as a direct and proximate result of the acts and omissions of Craft, as otherwise set forth in this Complaint, Nicole sustained severe injuries, pain and suffering, including a left fibula fracture requiring a cast.

28.   The injuries Nicole sustained prevented her from participating in her usual athletic activities, including a

-5-

swimming team, tennis and golf programs and part of her fall soccer season, from the time of the accident until October, 2001.

29.   Nicole's physical injuries caused her great pain and anguish and required significant expense for her treatment and care.

## COUNT I: NEGLIGENCE
## (Nicholas Martino v. Richard Craft)

30.   Plaintiffs incorporate by reference Paragraphs 1 through 29 of this Complaint.

31.   At all relevant times, Craft owed a duty to Martino to operate his wave runner in a safe manner and take all due care to avoid injuring Martino by his operation of the wave runner.

32.   Craft failed to use due care and caution when, without prior warning, he drove directly into Martino's wave runner causing serious injury to Martino.

33.   Under the circumstances, Craft's operation of the wave runner was unreasonable, negligent and in reckless disregard for the safety of Martino in that he:

a.   failed to learn how to properly and safely operate the wave runner and take reasonably necessary safety and training courses for the operation of such a craft;

b.   failed to give adequate warning that he was going to travel in the direction of Martino and Nicole;

c.   failed to keep proper lookout and observe the wave runner being operated by Martino even though it could clearly be seen;

d.   accelerated too quickly and traveled at an

07/25/2002 12:46 FAX 6103258889          STATE FARM INS.                    ☒009

excessive or unsafe speed;

      e.   failed to maintain control over his wave runner to avoid colliding with the wave runner operated by Martino;

      f.   failed to give Martino sufficient time to pass;

      g.   failed to give adequate room to stop his wave runner;

      h.   operated his wave runner while intoxicated or under the influence of alcohol; and

      i.   otherwise operated his wave runner in a unsafe, negligent and reckless manner.

34.   The collision and resulting injuries were a direct and foreseeable consequence of Craft's unreasonable, negligent and reckless operation of the wave runner.

35.   Martino at all times operated his wave runner safely having signaled Craft that he was going to turn his wave runner around to head back to the residence, doing so in plain view of Craft and operating his vessel in a safe distance from Craft and otherwise navigating the wave runner in a safe manner.

36.   As a direct and proximate result of Craft's negligent acts and omissions, Martino was injured and sustained severe damages.

WHEREFORE, plaintiff, Nicholas Martino, requests that this Court enter judgment in his favor in an amount in excess of $75,000, together with interest and costs of suit.

## COUNT II: NEGLIGENCE
### (Nicole Martino v. Richard Craft)

37.   Plaintiffs incorporate by reference Paragraphs 1 through 36 of this Complaint.

38.   At all relevant times, Craft owed a duty to Nicole to operate his wave runner in a safe manner and take all due care to avoid injuring her by his operation of the wave runner.

39.   Craft failed to use due care and caution for the safety of Nicole when, without prior warning, Craft drove directly into the side of the wave runner on which Nicole was riding.

40.   The collision and resulting injuries were a direct and foreseeable consequence of Craft's unreasonable, negligent and reckless operation of the wave runner.

41.   As a direct and proximate result of Craft's negligent acts and omissions, Nicole was injured and sustained severe damages.

WHEREFORE, plaintiff, Nicole Martino, a minor, by Marybeth Martino, her guardian, requests that this Court enter judgment in her favor in an amount in excess of $75,000, together with interest and costs of suit.

## COUNT III: NEGLIGENCE PER SE
### (Nicholas Martino v. Richard Craft)

42.   Plaintiffs incorporate by reference Paragraphs 1 through 41 of the Complaint.

43.   Craft's unreasonable, negligent and reckless operation of the wave runner, as set forth in Paragraph 33 of this Complaint, violated, inter alia, Maryland Natural Resources Code § 8-701 et. seq., Code of Maryland Regulations 08.18.02.05,

-8-

07/25/2002 12:46 FAX 6103258889           STATE FARM INS.                            ☑011

08.18.01.03, 08.18.01.05, 08,18.01.07 and 08.18.01.04, and the
Federal International-Inland Navigation Rules.

    44.  Craft's violation of these statutes and
regulations constitutes negligence per se.

    45.  Martino was within the class of persons these
statutes and regulations were designed to protect and the harm
which he sustained was the kind these statutes and regulations
were designed to prevent.

    46.  Craft's violations of these statutes and
regulations were a direct and proximate cause of Martino's injury
and damage.

    WHEREFORE, plaintiff, Nicholas Martino, requests that this
Court enter judgment in his favor in an amount in excess of
$75,000, together with interest and costs of suit.

**COUNT IV: NEGLIGENCE PER SE**
**(Nicole Martino v. Richard Craft)**

    47.  Plaintiffs incorporate by reference Paragraphs 1
through 46 of the Complaint.

    48.  Craft's unreasonable, negligent and reckless
operation of the wave runner, as set forth in Paragraph 33 of
this Complaint, violated, inter alia, Maryland Natural Resources
Code § 8-701 et. seq., Code of Maryland Regulations §§
08.18.02.05, 08.18.01.03, 08.18.01.05, 08.18.01.07 and
08.18.01.04, and the Federal International-Inland Navigation
Rules.

    49.  Craft's violation of these statues constitutes
negligence per se.

50.  Nicole was within the class of persons these statutes were designed to protect and the harm which she sustained was the kind these statutes were designed to prevent.

51.  Craft's violations of these statutes were a direct and proximate cause of Nicole's injury and damage.

WHEREFORE, plaintiff, Nicole Martino, a minor, by Marybeth Martino, her guardian, requests that this Court enter judgment in her favor in an amount in excess of $75,000, together with interest and costs of suit.

### COUNT V: NEGLIGENCE
### (Nicholas Martino v. John Hammerschmidt)

52.  Plaintiffs incorporate by reference Paragraphs 1 through 51 of this Complaint.

53.  At the time of the accident, the wave runners were owned by and under the control of Hammerschmidt, who had the right and ability to permit or prohibit use of the wave runners by Craft.

54.  From the time that Hammerschmidt initially permitted Craft to use the wave runners up through and including July 15, 2000, Hammerschmidt knew or should have known that Craft, because of his inexperience operating the wave runners, reckless propensities and previous unsafe operation of the wave runners, would likely operate the wave runners in a manner involving unreasonable risk of physical harm to others, including Martino.

55.  Hammerschmidt acted unreasonably and negligently in permitting, or failing to prohibit, Craft's use of the wave runners.

56. Hammerschmidt's negligent entrustment of the wave runners to Craft was the proximate cause of Martino's injuries and damage.

WHEREFORE, plaintiff, Nicholas Martino, requests that this Court enter judgment in his favor in an amount in excess of $75,000, together with interest and costs of suit.

### COUNT VI: NEGLIGENCE
### (Nicole Martino v. John Hammerschmidt)

57. Plaintiffs incorporate by reference Paragraphs 1 through 56 of this Complaint.

58. At the time of the accident, the wave runners were owned by and under the control of Hammerschmidt, who had the right and ability to permit or prohibit use of the wave runners by Craft.

59. From the time that Hammerschmidt initially permitted Craft to use the wave runners up through and including July 15, 2000, Hammerschmidt knew or should have known that Craft, because of his inexperience operating the wave runners, reckless propensities and previous unsafe operation of the wave runners, would likely operate the wave runners in a manner involving unreasonable risk of physical harm to others, including Nicole.

60. Hammerschmidt acted unreasonably and negligently in permitting, or failing to prohibit, Craft's use of the wave runners.

61. Hammerschmidt's negligent entrustment of the wave runners to Craft was the proximate cause of Nicole's injuries and damage.

WHEREFORE, plaintiff, Nicole Martino, a minor, by Marybeth Martino, her guardian, requests that this Court enter judgment in her favor in an amount in excess of $75,000, together with interest and costs of suit.

## COUNT VII: LOSS OF CONSORTIUM
### (Marybeth Martino v. Richard Craft)

62. Plaintiffs incorporate by reference Paragraphs 1 through 61 of this Complaint.

63. At all relevant times, Craft owed a duty to Marybeth Martino to avoid interfering with her right to the aid, assistance, comfort, society, companionship and affection of her husband, Nicholas Martino.

64. As set forth above, Craft acted unreasonably and negligently in his operation of the wave runner, proximately causing serious injury and damage to Martino, her husband.

65. As a direct and proximate result of the negligent acts and omissions of Craft, as set forth in Paragraph 33 of the Complaint, Craft injured Martino in such a way as to deprive Marybeth Martino of her right to the aid, assistance, comfort, society, companionship and affection of her husband.

WHEREFORE, plaintiff, Marybeth Martino, requests that this Court enter judgment in her favor in an amount in excess of $75,000, together with interests and costs of suit.

## COUNT VIII: LOSS OF CONSORTIUM
### (Marybeth Martino v. John Hammerschmidt)

66. Plaintiffs incorporate by reference Paragraphs 1 through 65 of this Complaint.

67. At all relevant times, Hammerschmidt owed a duty to Marybeth Martino to avoid interfering with her right to the

-12-

aid, assistance, comfort, society, companionship and affection of her husband, Nicholas Martino.

68.   As set forth above, Hammerschmidt acted unreasonably and negligently in permitting, or failing to prohibit, Craft's use of the wave runner, which proximately caused serious injury and damage to Martino.

69.   As a direct and proximate result of Hammerschmidt's negligent entrustment of the wave runners, Nicholas Martino was injured in such a way as to deprive Marybeth Martino of her right to the aid, assistance, comfort, society, companionship and affection of her husband.

WHEREFORE, plaintiff, Marybeth Martino, requests that this Court enter judgment in her favor in an amount in excess of $75,000, together with interests and costs of suit.

**OF COUNSEL:**
Pelino & Lentz, P.C.
One Liberty Place
1650 Market Street
Thirty-Second Floor
Philadelphia, PA 19103-7393
215-665-1540

Howard A. Rosenthal
Kevin C. Rakowski
   Attorneys for Plaintiffs,
   Nicholas Martino and Nicole
   Martino, a minor, by her
   parent and guardian,
   Marybeth Martino and
   Marybeth Martino, in her
   own right

**Exhibit B**

MARTINO #6

## STATE OF MARYLAND
## WATERCRAFT ACCIDENT REPORT

| RECREATIONAL ☐ | COMMERCIAL ☐ | BOTH ☐ | MO 07 | DATE DAY 16 | YEAR 00 | TIME (MILITARY) 1921 | DAY OF WEEK SAT | INCIDENT NUMBER 100017066 U |

NOTIFIED (MILIT) 1922
TIME ARRIVED (MILIT) 1956

**ACCIDENT SEVERITY (8)**
☐ Damage Only ☒ Incapacitating Inj.
☐ Possible Injury ☐ Fatal
☐ Non-incapacitating Inj. ☐ Missing

**ACCIDENT TYPE (9)**
☐ Grounding ☐ Sinking ☐ Collision Fix Object ☐ Falls in Boat ☐ Other (Specify)
☐ Capsizing ☐ Fire or Explosion ☐ Collision Flo Object ☐ Hit By Boat or Propeller
☐ Flooding ☒ Collision Vessel ☐ Falls Overboard ☐ Burns

**COLLISION TYPE (10)**
☒ Head On ☐ Angle
☐ Rear End ☐ Other
☐ Side Swipe

TOTAL VESSELS INVOLVED: 2

LOCATION OF INCIDENT (BAY, RIVER, CREEK, COVE, LAKE, ETC.) SASSAFRASS RIVER
LOCATION CODE
NEAREST TOWN GALENA
COUNTY KE

DAMAGE TO PROPERTY OTHER THAN VESSEL
OBJECT N/A
OWNER NAME (FIRST, MIDDLE, LAST & ADDRESS) N/A
**DAMAGE SEVERITY** ☐ Superficial ☒ Minor ☐ Moderate ☐ Destroyed

## VESSEL NUMBER 1

OPERATOR NAME (FIRST, MIDDLE, LAST) RICHARD ELLIS CRAFT
SEX M
DATE OF BIRTH 01-28-60
INJURY 1
COND 2
PA OLN 18791192

ADDRESS (NUMBER AND STREET) 659 ANDOVER RD
CITY NEW TOWN SQUARE
STATE PA
ZIP CODE 19073
HOME PHONE NUMBER 410-648-5647

OCCUPATION Financial Planner
EMPLOYER Wealth Advisory
ADDRESS 40 MONUMENT RD
STATE PA
ZIP CODE 19073
WORK PHONE NUMBER 610-353-3033

OPERATOR BOATING EXPERIENCE
☐ NONE ☐ UNDER 20 HRS ☐ 20-100 HRS ☐ 100-500 HRS ☒ OVER 500 HRS
OPERATOR BOATING EDUCATION N/A
☐ USCGA ☐ STATE ☐ USPS ☐ LICENSED ☐ NONE ☐ OTHER

OWNERS NAME (FIRST, MIDDLE, LAST) (SAME AS OPERATOR)
ADDRESS (NUMBER AND STREET)
CITY STATE ZIP CODE PHONE NUMBER

MAKE OF VESSEL YAMAHA
MODEL XA8004
TYPE PWC
PWC ☒ YES ☐ NO
NAME OF VESSEL N/A
DOCUMENTED ☐ YES ☒ NO
REGIST. OR DOCUMENT NUMBER MD 2855 BL

COLOR PURP
HULL MAT'L 2
FUEL 1
YEAR 00
LENGTH 10'5"
WIDTH 40"
DRAFT 12"
SERIAL NUMBER (HIN) YAMA 3165A000
EST. DAMAGE ($) (BY WHOM) 50.00

# ENGINES 1
MAKE OF ENGINE YAMAHA
TYPE ☐ OUTBOARD ☐ INBOARD/OUTBOARD ☐ INBOARD ☒ JET ☐ OTHER
HORSEPOWER 120
YEAR 00

DIRECTION OF TRAVEL WEST
POINT OF IMPACT PORT MID
P.O.B 2
H.P. RATING N/A
LEGAL CAPACITY N/A
EST. SPEED 20
VESSEL INSURED ☐ YES ☐ NO ☒ UNKNOWN

DESCRIBE DAMAGE TO VESSEL SCRAPES IN THE STARBOARD BOW FIBERGLASS.
**DAMAGE SEVERITY** ☐ Disabling Damage ☒ Functional Damage ☐ Other Damage ☐ No Damage
NAME OF INSURANCE CO. AND AGENT N/A
ADDRESS

VESSEL REMOVED TO N/A
BY N/A

OCCUPANT LOCATION

| | OCCUPANT NAME | ADDRESS | DOB | SEX | INJURY | COND. |
|---|---|---|---|---|---|---|
| 1 | (A) RICHARD CRAFT | | 1-28-60 | M | 1 | 2 |
| 2 | | | | | | |
| 3 | | | | | | |
| 4 | | | | | | |
| 5 | | | | | | |
| 6 | | | | | | |

Operator location by the letter "A" and passengers by their respective number.

## CODES

| HULL CODE | INJURY SEVERITY CODE | CONDITION CODE | FUEL CODE |
|---|---|---|---|
| 3 Aluminum | 1. No Injury  4. Incapacitating Inj. | 1. Apparently Normal  4 Other handicaps | 1. Gasoline |
| 4 Steel | 2. Possible Injury  5. Fatal | 2. Had Been Drinking  (Emotional prob. Etc.) | 2. Dies |
| 5 Other | 3. Non-incapacitating | 3. Physical Defects | |

| VESSEL NUMBER 2 | | INCIDENT NUMBER: | |
|---|---|---|---|

| OPERATOR NAME (FIRST, MIDDLE, LAST) | SEX | DATE OF BIRTH MO. DAY YEAR | INJURY | COND. | LICENSE NUMBER (SPECIFY) |
|---|---|---|---|---|---|
| NICHOLAS WALTER MARTINO | M | 08-19-55 | 4 | 1 | PA OW/16 560602 |

| ADDRESS (NUMBER AND STREET) | CITY | STATE | ZIP CODE | HOME PHONE NUMBER |
|---|---|---|---|---|
| 5 GREGORY LN | Newtown Square | PA | 19073 | 610-353-3098 |

| OCCUPATION | EMPLOYER MeRiT | ADDRESS | STATE | ZIP CODE | WORK PHONE NUMBER |
|---|---|---|---|---|---|
| SALES MAN | INDUSTRIS | Be NSALEM | PA | N/A | 215-633-9891 |

| OPERATOR BOATING EXPERIENCE | | | | | OPERATOR BOATING EDUCATION | | | | |
|---|---|---|---|---|---|---|---|---|---|
| [ ] NONE | [ ] UNDER 20 HRS | [X] 20-100 HRS | [ ] 100-500 HRS | [ ] OVER 500 HRS | [ ] USCGA [ ] STATE [ ] USPS [ ] LICENSED [ ] NONE [X] OTHER N/A | | | | |

| OWNERS NAME (FIRST, MIDDLE, LAST) | ADDRESS (NUMBER AND STREET) | CITY | STATE | ZIP CODE | PHONE NUMBER |
|---|---|---|---|---|---|
| RICHARD CRAFT | 659 ANDOVER RD | Newtown Square | | | 610- |

| MAKE OF VESSEL | MODEL | TYPE | PWC | NAME OF VESSEL | DOCUMENTED | REGIST. OR DOCUMENT NUMBER |
|---|---|---|---|---|---|---|
| YAMAHA | XA800Y | PWC | [ ] YES [X] NO | N/A | [ ] YES [X] NO | MD 2852 BL |

| COLOR | HULL MAT'L | FUEL | YEAR | LENGTH | WIDTH | DRAFT | SERIAL NUMBER (HIN) | EST. DAMAGE ($) (BY WHOM) |
|---|---|---|---|---|---|---|---|---|
| WHT/RED/PURPLE | 2 | 1 | .00 | 10'5" | 40" | 12" | YAMA 3166A000 | 150,00 |

| # OF ENGINES | MAKE OF ENGINE | TYPE: | HORSEPOWER | YEAR |
|---|---|---|---|---|
| 1 | YAMAHA | [ ] OUTBOARD [ ] INBOARD/OUTBOARD [X] INBOARD [ ] JET [ ] OTHER | 120 | 00 |

| DIRECTION OF TRAVEL | POINT OF IMPACT | P.O.B. | H.P. RATING | LEGAL CAPACITY | EST. SPEED | VESSEL INSURED |
|---|---|---|---|---|---|---|
| SOUTHWEST | PORT MID | 2 | N/A | N/A | 20 KNOTS | [ ] YES [ ] NO [X] UNKNOWN |

| DESCRIBE DAMAGE TO VESSEL | DAMAGE SEVERITY | NAME OF INSURANCE CO. AND AGENT |
|---|---|---|
| SCRAPES TO PORT mid Fiberglass, TORN SEAT. | [ ] Disabling Damage [ ] Other Damage [X] Functional Damage [ ] No Damage | N/A |
| | | ADDRESS |

| VESSEL REMOVED TO | BY |
|---|---|
| | |

| OCCUPANT LOCATION | OCCUPANT NAME | ADDRESS | DOB | SEX | INJURY |
|---|---|---|---|---|---|
| (1A) (2) | 1. NICHOLAS MARTINO | 5 GREGORY LN, Newtown SQUARE PA | 8-19-55 | M | 4 |
| | 2. NICOLE MARTINO | " " " | 4-25-90 | F | 1 |
| Refer to Operator location by the letter "A" and occupant location by their respective number. | 3. | | | | |
| | 4. | | | | |
| | 5. | | | | |
| | 6. | | | | |

| NAME | ADDRESS | DOB | TELEPHONE |
|---|---|---|---|
| 1. | | | |
| 2. | | | |
| 3. | N/A | | |
| 4. | | | |
| 5. | | | |
| 6. | | | |

| PHOTOS TAKEN? | INVESTIGATED AT SCENE? | INVESTIGATION COMPLETE? | ALCOHOL TEST | | | | | | TEST RESULTS |
|---|---|---|---|---|---|---|---|---|---|
| | | | | 1 | 2 | VICTIM | 1 | 2 | VICTIM |
| [ ] Yes | [X] Yes | [X] Yes | | [X] [X] | [X] None Offered | | [ ] [ ] | [ ] Post Mortem | 1 ___ BAC |
| [ ] No | [ ] No | [ ] No | | [ ] [ ] | [ ] Blood | | [ ] [ ] | [ ] Refused | 2 N/A BAC |
| | | | | [ ] [ ] | [ ] Breathalyzer | | [ ] [ ] | | Victim ___ P. ___ |

| CODES | | | |
|---|---|---|---|
| MATERIAL CODE | INJURY SEVERITY CODE | CONDITION CODE | FUEL CODE |
| 1. Wood          3. Aluminum | 1. No Injury          4. Incapacitating Inj. | 1. Apparently Normal     4. Other handicaps      6. Ill | 1. Gasoline |
| 2. Fiberglass    4. Steel | 2. Possible Injury    5. Fatal | 2. Had Been Drinking    (Emotional prob. Etc.)   7. Fatigued | 2. Diesel |
| 3. Other | 3. Non-Incapacitating 5. Missing | 3. Physical Defects     5. Conditions Unknown   8. Apparently Asleep | |

INCIDENT NUMBER  100017066 U

| ...ERATION AT TIME OF ACCIDENT | 2 | 1 | 2 | | | |
|---|---|---|---|---|---|---|
| CRUISING | ☐ 2 | ☐ 1 | | FUELING | ☐ | |
| APPROACHING DOCK | ☐ | ☐ | | FISHING/HUNT | ☐ | |
| LEAVING DOCK | ☐ | ☐ | | WATER SKIING | ☐ | |
| RACING | ☐ | ☐ | | SCUBA DIVING | ☐ | |
| TOWING | ☐ | ☐ | | SWIMMING | ☐ | |
| BEING TOWED | ☐ | ☒ | | MANEUVERING | ☒ | |
| AT ANCHOR | ☐ | ☐ | | DRIFTING | ☐ | |
| TIED TO DOCK | ☐ | ☐ | | UNKNOWN | ☐ | |
| WHITEWATER OPERATION | ☐ | ☐ | | OTHER (Specify) | ☐ | |

**WEATHER**
- ☐ Clear
- ☒ Cloudy
- ☐ Rain
- ☐ Snow
- ☐ Hazy
- ☐ Fog
- ☐ Unknown

**WIND**
- ☐ None
- ☒ Light (0-6 MPH)
- ☐ Moderate (7-15 MPH)
- ☐ Strong (15-25 MPH)
- ☐ Storm (Over 25 MPH)
- ☐ Unknown

Wind Direction  _WEST_

Est. Air Temp  _80_

**WATER**
- ☒ Calm
- ☐ Choppy
- ☐ Rough
- ☐ Very Rough
- ☐ Strong Current
- ☐ Flood
- ☐ Ebb
- ☐ Unknown

Est. Temp  _68_

**LIGHT**
- ☒ Day
- ☐ Dawn
- ☐ Dusk
- ☐ Dark
- ☐ Moon
- ☐ Artificial
- ☐ Unknown

---

**...FFIC**
- ...one
- ...Light
- ...Medium
- ...Heavy
- ...Congested
- ...Unknown

**REQUIRED EQUIPMENT ON BOARD**

| | VESSEL 1 | | | | VESSEL 2 | | | | | CONTRIBUTING FACTORS | 1 2 | | | 1 2 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Yes | No | Used | Unk | Yes | No | Used | Unk | | | | | | | |
| Personal Flotation Devices | ☒ | ☐ | ☒ | ☐ | ☒ | ☐ | ☐ | ☐ | | Excessive Speed | ☐ | ☐ | Fault of Hull | ☐ | ☐ |
| Victim Wearing PFD | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | | No Proper Lookout | ☐ | ☐ | Fault of Machinery | ☐ | ☐ |
| Fire Extinguishing Device | ☒ | ☐ | ☐ | ☐ | ☒ | ☐ | ☐ | ☐ | | Operator Inattention | ☐ | ☐ | Fault of Equipment | ☐ | ☐ |
| Flame Arrestor | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | | Operator Inexperience | ☐ | ☐ | Wake | ☐ | ☐ |
| Navigation (Lights, Shapes, Whistles, Foghorns, Bells, etc) | ☒ | ☐ | ☐ | ☐ | ☒ | ☐ | ☐ | ☐ | | Negligent/Reckless Operation | ☐ | ☐ | Weather Conditions | ☐ | ☐ |
| | | | | | | | | | | Overloading | ☐ | ☐ | Hazardous Waters | ☐ | ☐ |
| | | | | | | | | | | Improper loading | ☐ | ☐ | Unknown | ☐ | ☐ |
| | | | | | | | | | | Alcohol Use | ☐ | ☐ | None Indicated | ☐ | ☐ |
| | | | | | | | | | | Drug Use | ☐ | ☐ | Other (Specify) | ☐ | ☐ |
| | | | | | | | | | | Fault of Other Person | ☐ | | | | |

---

**...AID ADMINISTERED BY:**
- ...lice  ☐ Refused
- ...reman  ☒ None
- ...mbulance Personnel  ☐ Unknown  ☐ Other (Specify)

**...ul Could**
- ...s swim  ☐ Yes  ☐ No  ☐ Unk

| TIME EMS REQUESTED: | INJURED TAKEN BY: | CHARGE - LIST SECTION |
|---|---|---|
| 1921 | MSP Trooper 6 | 1 ☒ Yes  NR 8-704 / 08.18.02.05L  ☐ No |
| **EMS ARRIVED TIME:** 1935 | **INJURED TAKEN TO:** BALTIMORE SHOCK TRAUMA | 2 ☒ Yes  NR 8-704 / 08.18.02.05L  ☐ No |

---

...RAM (Label the vessel(s) with their respective number 1, 2, etc.)

SHOW NORTH BY ARROW



MD 2852 BL

MD 2855 BL

| INCIDENT NUMBER: | 1 0 0 0 1 7 0 6 6 U |
|---|---|

NARRATIVE DESCRIPTION

MR. RICHARD CRAFT WAS THE OPERATOR OF VESSEL #1 MD 2855 BL,
MR. NICHOLAS MARTINO WAS THE OPERATOR OF VESSEL #2 MD 2852 BL.

BOTH INDIVIDUALS WERE SITTING ALONG SIDE EACH OTHER AT THE GASSAFRASSR
TALKING. THEY BOTH TOOK OFF AT THE SAME TIME UP ON PLANE, ESTIMATED SPEED
WAS APROX. 20 KNOTS. BOTH SKIS TURNED INTO ONE ANOTHER. MR CRAFT'S SKI
STRUCK MR. MARTINO'S SKI ON ITS PORT MID SIDE. THERE WAS DAMAGE TO THE
PORT MID SIDE FIBER GLASS AND A TEAR IN THE SEAT ALONG WITH PAINT TRANSER
MR. CRAFT'S SKI RECEIVED DAMAGE TO THE STARBOARD BOW (CHIPS IN THE FIBERGLASS)
AS A RESULT MR. MARTINO WAS FLOWN TO SHOCK TRAUMA IN BALTIMORE AND
TREATED FOR A BROKEN LEG.

| (BOATING ACCIDENT REPORT) GIVEN TO: | VESSEL 1 Yes No | VESSEL 2 Yes No | VESSEL ___ Yes No | SUPPLEMENTAL REPORT ATTACHED Yes No | STATUS |
|---|---|---|---|---|---|
| | ☒ ☐ | ☒ ☐ | ☐ ☐ | ☐ ☒ | OPEN ☐ CLOSED ☒ SUSPENDED ☐ |

| INVESTIGATING OFFICER | ID NUMBER | REPORTING AGENCY | DATE |
|---|---|---|---|
| PL. ROBERT KERSEY | 1316 | NRP | 7-15-00 |

| REVIEWED BY: (Criminal Investigator's Signature) | ID NUMBER | ASSISTING WITH INVESTIGATION | DATE |
|---|---|---|---|
| PL. Robert Alexander | 1227 | YES ☐  NO ☒ | 7-27-00 |

| SUPERVISOR | DATE | APPROVED BY | DATE |
|---|---|---|---|
| | 7-26-00 | Lt. Q Bar | 7/30/00 |