IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NICHOLAS MARTINO, et al. | : | CIVIL ACTION |
| | : | NO. 02-4633 |
| v. | : | |
| RICHARD CRAFT, et al. | : | |

O'Neill, J.                                                                                             October     , 2003

**<u>MEMORANDUM</u>**

I. INTRODUCTION

Plaintiffs, Nicholas Martino ("Martino") and Marybeth Martino, in her own right and as parent and natural guardian of Nicole Martino, a minor, instituted this action on or about July 12, 2002. The action arises out of a waverunner accident that occurred on July 15, 2000 on the Sassafras River in Maryland. In their complaint, plaintiffs allege that this court's jurisdiction over the action is founded on federal admiralty jurisdiction pursuant to Article III, Section 3 of the U.S. Constitution and 28 U.S.C. §1333. Presently before me is defendants' Rule 12(b)(1) motion to dismiss for lack of jurisdiction over the subject matter. For the reasons stated below I will deny defendants' motion.

II. BACKGROUND

On July 15, 2000, plaintiffs Nicholas and Nicole Martino and defendant Richard Craft launched two waverunners owned by defendant John Hammerschmidt from defendants' dock for

an excursion on the Sassafras River.[1]  Before returning to the dock, the waverunners collided and Martino was injured.  The precise sequence of events leading to the collision is in dispute.  It is not disputed, however, that subsequent to the accident, Craft and Martino were able to negotiate their vessels back to the defendants' dock where local law enforcement was summoned to investigate the collision.  Local EMTs provided medical attention to Martino who was then taken by medivac helicopter to a hospital in Baltimore for further treatment.

### III. STANDARD FOR RULE 12(b)(1)

The party asserting jurisdiction bears the burden of persuasion when subject matter jurisdiction is challenged, but the legal "standard for surviving a Rule 12(b)(1) motion is lower than that for a Rule 12(b)(6) motion."  Gould Elecs., Inc. v. United States, 220 F.3d 169, 178 (3d Cir. 2000), citing Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991) To dismiss a complaint for lack of subject matter jurisdiction on a 12(b)(1) motion, it must "appear[ ] to a certainty that the pleader will not be able to assert a colorable claim of subject matter jurisdiction."  Smith v. Soc. Sec. Admin., 54 F. Supp. 2d 451, 453 (E.D. Pa., 1999), citing Kronmuller v. West End Fire Co. No.3, 123 F.R.D. 170, 172 (E.D. Pa. 1988).  Where the legal theory alleged is "probably false," dismissal is not proper.  Kulick v. Pocono Downs Racing Ass'n, 816 F.2d 895, 899 (3d Cir.1987).  Dismissal for lack of jurisdiction is only appropriate "because the right claimed is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.'"  Id., quoting Oneida Indian Nation v. County of Oneida, 414 U.S. 661, 666 (1974).

---

[1] All parties to the lawsuit are Pennsylvania residents.

IV.  DISCUSSION

I cannot conclude that plaintiffs' claim of admiralty jurisdiction is so devoid of merit as to deprive this Court of subject matter jurisdiction.  Plaintiffs assert that jurisdiction is conferred by Article 3, Section 2 of the U.S. Constitution and 28 U.S.C. § 1333(1) (2003), which provides in part that:

> The district courts shall have original jurisdiction, exclusive of the courts of the States, of . . . any civil case in admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled.

Summarizing prior precedent, the Supreme Court articulated a three-pronged test for determining when a case sounds in admiralty in Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527 (1995), citing Sisson v. Ruby, 497 U.S. 358 (1990); and Foremost Ins. Co. v. Richardson, 457 U.S. 668 (1982).  See also, Gibbs v. Carnival Cruise Lines, 314 F.3d 125, 131-32 (3d Cir. 2002); Kulesza v. Scout Boats, Inc., No. 99-3488, 2000 U.S. Dist. LEXIS 11972, at *15 (E.D. Pa. Aug. 8, 2000).  First, a court "must determine whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water." Grubart, 513 U.S. at 534.  This is the traditional location test.  Second, the court needs to "assess the general features of the type of incident involved to determine whether the incident has a potentially disrupting impact on maritime commerce."  Id. (internal quotations omitted).  Third, a court must "determine whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity." Id. (internal quotations omitted).  The parties do not dispute that the waverunner accident occurred on a navigable waterway and therefore meets the location prong of the test for admiralty jurisdiction.

The Supreme Court has cautioned that "not every accident in navigable waters that might

disrupt maritime commerce will support maritime jurisdiction." Richardson at 675 n.5. Defendants use this caveat to support their argument that admiralty jurisdiction is not appropriate here. However, this warning merely reflects the Court's view that admiralty jurisdiction should not be awarded based on "a location rule so rigid as to extend admiralty to a case involving an airplane, not a vessel, engaged in an activity far removed from anything traditionally maritime." Grubart, 513 U.S. at 542, citing Executive Jet Aviation, Inc. v. City of Cleveland, 409 U.S. 249, at 268-74 (1972) (holding that federal admiralty jurisdiction did not extend to an aviation tort claim where an airplane crash landed and sank in Lake Erie). So long as the activity giving rise to a claim has a connection to traditional maritime endeavors, admiralty jurisdiction is appropriate even where there is no actual impact on maritime commerce. See Grubart, 513 U.S. at 543 (Agreeing that although the "cases do not say that every tort involving a vessel on navigable waters falls within the scope of admiralty jurisdiction no matter what, they do show that ordinarily that will be so.").

### A. Potential Impact on Maritime Commerce

While it may be true that this accident did not *actually* threaten to disrupt maritime commerce, the second prong of the test for whether admiralty jurisdiction is appropriate is met because the accident *could* have had an impact on commerce. Plaintiff argues that it is a tenuous argument that commercial navigation could have been affected as a result of the waverunner collision and that therefore admiralty jurisdiction is inappropriate in this case. However, "the potential impact on commerce must be judged in terms of the general characteristics of the activity, not the particular facts of the incident or the actual effect it had." Sinclair, 935 F.2d at 602, citing Sisson, 497 U.S. at 2896.


In Richardson, two boats being used for recreational purposes collided on Louisiana's Amite River. The boats and parties involved had no connection to any commercial activity and the accident had no impact on other commercial vessels or activities. Despite this, the Supreme Court found admiralty jurisdiction was appropriate, explaining:

> [t]he potential disruptive impact of a collision between boats on navigable waters, when coupled with the traditional concern that admiralty law holds for navigation, compels the conclusion that this collision between two pleasure boats on navigable waters has a significant relationship with maritime commerce.

Richardson, 457 U.S. at 675. The Court further hypothesized that although the location of the accident was "seldom, if ever, used for commercial traffic," Id. at 670 n.2, "if these two boats [had] collided at the St. Lawrence Seaway, there would [have been] a substantial effect on maritime commerce, without regard to whether either boat was actively, or had been previously, engaged in commercial activity." Id. at 675. This *potential* impact was sufficient to bring the case within the requirements for admiralty jurisdiction. The general characteristics of the collision between two watercraft were more important than the actual impact of the collision for the purpose of determining jurisdiction.

In Calhoun v. Yamaha Motor Corp., U.S.A., 216 F.3d 338 (3d Cir. 2000), a recreational jet ski operator died after crashing into a boat anchored off a hotel. The Court of Appeals held that admiralty jurisdiction was appropriate "so long as the incident in question . . . could, in any way, impact upon the flow of maritime commerce." Id. at 345. The Court explained that it was enough that "the vessel that Natalie struck *could* have been a commercial boat, or the ensuing investigation into the crash *could* have made commercial navigation in and around the marina difficult." Id. at 345 (emphasis added).

Although there is no evidence that this accident required emergency or law enforcement

personnel to enter upon the Sassafras, that debris from the accident obstructed a navigable waterway or that there was any other immediate impact on maritime commerce on the Sassafras, plaintiffs need not establish that the accident had any actual impact. To establish that their case falls under maritime jurisdiction it is sufficient that plaintiffs can demonstrate the collision between the waverunners had a potential impact on maritime commerce. Had Martino's injuries required a floating rescue effort, the waverunners been rented or the location of the accident been more highly trafficked, maritime commerce may have been disrupted. Further, the allegedly negligent navigation of a vessel certainly poses a potential hazard to commercial vehicle traffic. Therefore plaintiffs can establish the second requirement for the application of admiralty jurisdiction.

### B. Substantial Relationship to Traditional Maritime Activity

Plaintiffs also meet the third prong of the test for admiralty jurisdiction; the operation of a personal watercraft such as a waverunner bears a substantial relationship to traditional maritime activity. In Richardson, 457 U.S., at 675, n. 5, the Supreme Court identified navigation as an example of conduct that is substantially related to traditional maritime activity.[2] The alleged wrong in this case took place while the parties here were navigating the Sassafras. In Richardson, the Court also explained that "the negligent operation of a vessel on navigable waters . . . has a sufficient nexus to traditional maritime activity to sustain admiralty jurisdiction." Id. at 674. Here, defendant similarly is alleged to have negligently operated a vessel on navigable waters.

---

[2]Navigation is defined as either " [t]he act of sailing vessels on water" or "[t]he process and business of directing the course of a vessel from one place to another." Black's Law Dictionary (7th ed. 1999).

To support their contention that there is not a sufficient nexus to traditional maritime activity to support admiralty jurisdiction in this case defendants point out that the waverunners at issue were not used for commercial transport and were privately owned rather than rented. Although the functions and roles of the parties and the types of vehicles and instrumentalities involved are factors to weigh in determining the relationship to traditional maritime activity, the Supreme Court has held that there is no commercial use requirement for a claim to fall under admiralty jurisdiction. Id. t 674 ("We also agree that there is no requirement that 'the maritime activity be an exclusively commercial one.'") (citation omitted). The Court explained:

> [t]he federal interest in protecting maritime commerce cannot be adequately served if admiralty jurisdiction is restricted to those individuals actually *engaged* in commercial maritime activity. This interest can be fully vindicated only if *all* operators of vessels on navigable waters are subject to uniform rules of conduct.

Id. at 674-75 (emphasis in original). In Sisson, the Court further explained that "[t]he need for uniform rules of maritime conduct and liability is not limited to navigation, but extends at least to any other activities traditionally undertaken by vessels, commercial or noncommercial." 497 U.S. at 367 (concluding that "storing and maintaining a vessel at a marina on a navigable waterway is substantially related to traditional maritime activity"), cited by Calhoun, 216 F.3d at 345.

Even noncommercial vessels such as the waverunners in this case may thus be subject to admiralty jurisdiction where it is necessary to promote uniformity and predictability in the law. If a line were drawn between accidents involving commercial and noncommercial vessels, rented waverunners would be subject to admiralty jurisdiction while those that were privately owned could be subject to state court jurisdiction, possibly producing disparate outcomes in litigation arising from otherwise similar facts. Although there is no alleged connection between the

parties' excursion on the Sassafras and any commercial activity, the lack of a commercial nexus is not sufficient to sever the ties between the parties' conduct at the time of the accident and the traditional maritime activity required for admiralty jurisdiction to apply. Plaintiffs thus meet the third requirement for the application of admiralty jurisdiction.

### C.  Conclusion

Therefore, because the accident in question occurred on a navigable waterway, had a potential impact on maritime commerce and originated with the maritime activity of the defendant, I conclude that plaintiffs' claim falls under admiralty jurisdiction and I will not dismiss this case for lack of subject matter jurisdiction.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NICHOLAS MARTINO, et al. | : | CIVIL ACTION |
| | : | NO. 02-4633 |
| v. | : | |
| RICHARD CRAFT, et al. | : | |

**ORDER**

AND NOW, this      day of October 2003, after considering defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and the plaintiff's response thereto, and for the reasons set forth in the accompanying memorandum, it is ORDERED that defendant's motion to dismiss is DENIED.

_____
THOMAS N. O'NEILL, JR., J.