**Exhibit A**

07/25/2002 12:45 FAX 6103258889                STATE FARM INS.                                    ☒002

## SUMMONS IN A CIVIL ACTION

### UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NICHOLAS MARTINO; NICOLE MARTINO, a minor, by Marybeth Martino, her parent and natural guardian and MARYBETH MARTINO<br><br>v.<br><br>RICHARD CRAFT and JOHN HAMMERSCHMIDT | CIVIL ACTION NO. 02-4633<br><br><br>TO: (NAME AND ADDRESS OF DEFENDANT)<br><br>*John Hammerschmidt*<br>*7 Greenbriar Lane*<br>*Paoli, PA   19301* |

### YOU ARE HEREBY SUMMONED and required to serve upon

Plaintiff's Attorney (Name and Address)

Howard A. Rosenthal, Esq.
Pelino & Lentz, PC
One Liberty Place, 32nd flr.
Philadelphia, PA 19103

an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

| Michael E. Kunz, Clerk of Court | Date: 7/12/02 |
|---|---|

(By) Deputy Clerk

TRICIA A. JONES

EXHIBIT

07/25/2002 12:45 FAX 6103258889                STATE FARM INS.

**TO'N**

## UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Nicholas Martino,<br>5 Gregory Lane<br>Newtown Square, PA    19073 | :<br>:<br>:    Civil Action No.<br>:<br>: |
| and | : |
| Nicole Martino, a minor, by<br>Marybeth Martino, her parent and<br>natural guardian<br>5 Gregory Lane<br>Newtown Square, PA    19073 | :<br>:<br>:<br>:<br>: |
| and | : |
| Marybeth Martino<br>5 Gregory Lane<br>Newtown Square, PA    19073 | :<br>:<br>: |
| Plaintiffs, | : |
| v. | : |
| Richard Craft<br>659 Andover Road<br>Newtown Square, PA    19073 | :<br>:<br>: |
| and | : |
| John Hammerschmidt<br>7 Greenbriar Lane<br>Paoli, PA    19301 | :<br>:<br>: |
| Defendants. | : |

Civil Action No.

02cv4633

### COMPLAINT

Plaintiffs, Nicholas Martino, Nicole Martino, a minor, by Marybeth Martino, her parent and natural guardian, and Marybeth Martino, in her own right, by their attorneys, bring this action against defendants, and aver as follows:

### I.    STATEMENT OF JURISDICTION AND VENUE

1.    Jurisdiction is founded on this Court's federal admiralty jurisdiction pursuant to Article III, Section 2 of the United States Constitution and 28 U.S.C. § 1333 as the events or omissions giving rise to plaintiffs' claims occurred on the

Sassafras River, a navigable waterway, and were significantly related to traditional maritime activity.

2.    Venue is proper in the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1391(b) in that both defendants reside in this judicial district and in the Commonwealth of Pennsylvania.

## II.    THE PARTIES

3.    Nicholas Martino ("Martino")is an adult individual residing at 5 Gregory Lane, Newtown Square, Pennsylvania 19072.

4.    Nicole Martino ("Nicole")is a minor residing with her parent and natural guardian, Marybeth Martino, at 5 Gregory Lane, Newtown Square, Pennsylvania 19073.

5.    Marybeth Martino is an adult individual residing at 5 Gregory Lane, Newtown Square, Pennsylvania 19072 and is the wife of Nicholas Martino.

6.    Richard Craft ("Craft") is an adult individual residing at 659 Andover Road, Newtown Square, Pennsylvania 19073.

7.    John Hammerschmidt ("Hammerschmidt") is an adult individual residing at 7 Greenbriar Lane, Paoli, Pennsylvania 19301.

## III.    FACTS

8.    On or about July 15, 2000, Craft and Hammerschmidt were co-owners of a vacation residence located on the Sassafras River in or near Galena, Maryland.

9.    The Sassafras River is used, or is susceptible of being used, as a highway for commerce over which trade and travel are or may be conducted and is, therefore, a navigable waterway.

10.    Located at the residence were two water craft

-2-

known as "wave runners" which Hammerschmidt owned and had the right and ability to permit or prohibit others including Craft from using.

11.   At all relevant times, Hammerschmidt knowingly permitted Craft and others to use the wave runners.

12.   On July 15, 2000, Martino, his wife, Marybeth, and their daughter, Nicole, were visiting the defendants' vacation residence as invited guests of Craft.

13.   At approximately 4 to 5 p.m., at Craft's suggestion, Craft, his son, Martino and Nicole took the wave runners out for a ride on the Sassafras River.  Martino and Nicole were riding on one of the wave runners, while Craft and his son were riding on the other.

14.   At all relevant times, Craft had a duty to persons traveling on the Sassafras River to operate his wave runner in a safe manner and take all due care to avoid injuring others by his operation of the wave runner.

15.   While operating his wave runner, Craft, without prior warning, drove directly into Martino's wave runner injuring both Martino and his daughter, Nicole.

16.   Following the impact, Martino had to drive his wave runner with his leg broken and bleeding severely for approximately five minutes until he could reach the shore.

17.   After Martino reached shore, an EMT team performed emergency treatment until Martino was taken by medivac helicopter to the R. Adams Crowley Shock Trauma Center in Baltimore, Maryland.

18.   Nicole was taken to a local hospital by her mother.

19.   Martino sustained severe, permanent, painful and disabling physical injuries, including:

a.   a type three open tibia fracture of the left leg which, to date, has, required 23 surgical procedures and multiple, extended hospital stays for treatment which has included the placing, setting and re-setting an external fixator; extensive muscle grafting; reconstructive surgery and skin grafting; bone graft surgery; the removal of additional destroyed muscle; installation of a rod; the insertion of a port in Mr. Martino's chest for antibiotic treatment and extensive rehabilitation;

b.   the permanent destruction of otherwise healthy muscle and skin tissue;

c.   the onset of a heavy staph infection and chronic osteomyelitis which, if the infection develops a resistance to antibiotics, may require amputation of Martino's left leg;

d.   internal bleeding and aggravation of the staph infection;

e.   a loss of flexibility in Martino's ankle, foot and calf, requiring him to walk in a labored fashion and the shortening of one of Martino's legs, which requires him to wear custom lifts;

f.   permanent scarring; and

g.   constant pain in Martino's leg.

20. Martino's physical injuries are permanent in nature and are continuing.

21. Martino's physical injuries have directly limited, if not eliminated, his ability to remain physically active.

22. As a direct and proximate result of the accident, Martino has had to rely on a wheelchair or crutches to walk, cannot engage in many physical activities which he had previously enjoyed, such as exercising, playing in an adult soccer league and performing household chores, which he must now hire someone to do.

23. Martino's doctors have considered him disabled since the date of the accident and his injuries presently restrict his movement which currently limits his ability to work.

✱ 24. Because injuries from the accident precluded the international travel required by his employer, Martino lost his job and current and future salary, bonus opportunities and options.

25. As a further direct and proximate result of the accident, Martino has suffered a loss of past and future earnings.

26. Martino's physical injuries are permanent in nature and his damages are continuing.

27. Moreover, as a direct and proximate result of the acts and omissions of Craft, as otherwise set forth in this Complaint, Nicole sustained severe injuries, pain and suffering, including a left fibula fracture requiring a cast.

28. The injuries Nicole sustained prevented her from participating in her usual athletic activities, including a

-5-

swimming team, tennis and golf programs and part of her fall soccer season, from the time of the accident until October, 2001.

29.    Nicole's physical injuries caused her great pain and anguish and required significant expense for her treatment and care.

### COUNT I: NEGLIGENCE
### (Nicholas Martino v. Richard Craft)

30.    Plaintiffs incorporate by reference Paragraphs 1 through 29 of this Complaint.

31.    At all relevant times, Craft owed a duty to Martino to operate his wave runner in a safe manner and take all due care to avoid injuring Martino by his operation of the wave runner.

32.    Craft failed to use due care and caution when, without prior warning, he drove directly into Martino's wave runner causing serious injury to Martino.

33.    Under the circumstances, Craft's operation of the wave runner was unreasonable, negligent and in reckless disregard for the safety of Martino in that he:

a.    failed to learn how to properly and safely operate the wave runner and take reasonably necessary safety and training courses for the operation of such a craft;

b.    failed to give adequate warning that he was going to travel in the direction of Martino and Nicole;

c.    failed to keep proper lookout and observe the wave runner being operated by Martino even though it could clearly be seen;

d.    accelerated too quickly and traveled at an

excessive or unsafe speed;

      e.   failed to maintain control over his wave runner to avoid colliding with the wave runner operated by Martino;

      f.   failed to give Martino sufficient time to pass;

      g.   failed to give adequate room to stop his wave runner;

      h.   operated his wave runner while intoxicated or under the influence of alcohol; and

      i.   otherwise operated his wave runner in a unsafe, negligent and reckless manner.

34.  The collision and resulting injuries were a direct and foreseeable consequence of Craft's unreasonable, negligent and reckless operation of the wave runner.

35.  Martino at all times operated his wave runner safely having signaled Craft that he was going to turn his wave runner around to head back to the residence, doing so in plain view of Craft and operating his vessel in a safe distance from Craft and otherwise navigating the wave runner in a safe manner.

36.  As a direct and proximate result of Craft's negligent acts and omissions, Martino was injured and sustained severe damages.

WHEREFORE, plaintiff, Nicholas Martino, requests that this Court enter judgment in his favor in an amount in excess of $75,000, together with interest and costs of suit.

## COUNT II: NEGLIGENCE
### (Nicole Martino v. Richard Craft)

37. Plaintiffs incorporate by reference Paragraphs 1 through 36 of this Complaint.

38. At all relevant times, Craft owed a duty to Nicole to operate his wave runner in a safe manner and take all due care to avoid injuring her by his operation of the wave runner.

39. Craft failed to use due care and caution for the safety of Nicole when, without prior warning, Craft drove directly into the side of the wave runner on which Nicole was riding.

40. The collision and resulting injuries were a direct and foreseeable consequence of Craft's unreasonable, negligent and reckless operation of the wave runner.

41. As a direct and proximate result of Craft's negligent acts and omissions, Nicole was injured and sustained severe damages.

WHEREFORE, plaintiff, Nicole Martino, a minor, by Marybeth Martino, her guardian, requests that this Court enter judgment in her favor in an amount in excess of $75,000, together with interest and costs of suit.

## COUNT III: NEGLIGENCE PER SE
### (Nicholas Martino v. Richard Craft)

42. Plaintiffs incorporate by reference Paragraphs 1 through 41 of the Complaint.

43. Craft's unreasonable, negligent and reckless operation of the wave runner, as set forth in Paragraph 33 of this Complaint, violated, inter alia, Maryland Natural Resources Code § 8-701 et. seq., Code of Maryland Regulations 08.18.02.05,

-8-

'07/25/2002 12:46 FAX 6103258889        STATE FARM INS.                    Ø011

08.18.01.03, 08.18.01.05, 08,18.01.07 and 08.18.01.04, and the Federal International-Inland Navigation Rules.

44. Craft's violation of these statutes and regulations constitutes negligence per se.

45. Martino was within the class of persons these statutes and regulations were designed to protect and the harm which he sustained was the kind these statutes and regulations were designed to prevent.

46. Craft's violations of these statutes and regulations were a direct and proximate cause of Martino's injury and damage.

WHEREFORE, plaintiff, Nicholas Martino, requests that this Court enter judgment in his favor in an amount in excess of $75,000, together with interest and costs of suit.

## COUNT IV: NEGLIGENCE PER SE
### (Nicole Martino v. Richard Craft)

47. Plaintiffs incorporate by reference Paragraphs 1 through 46 of the Complaint.

48. Craft's unreasonable, negligent and reckless operation of the wave runner, as set forth in Paragraph 33 of this Complaint, violated, inter alia, Maryland Natural Resources Code § 8-701 et. seq., Code of Maryland Regulations §§ 08.18.02.05, 08.18.01.03, 08.18.01.05, 08.18.01.07 and 08.18.01.04, and the Federal International-Inland Navigation Rules.

49. Craft's violation of these statues constitutes negligence per se.

50.  Nicole was within the class of persons these statutes were designed to protect and the harm which she sustained was the kind these statutes were designed to prevent.

51.  Craft's violations of these statutes were a direct and proximate cause of Nicole's injury and damage.

WHEREFORE, plaintiff, Nicole Martino, a minor, by Marybeth Martino, her guardian, requests that this Court enter judgment in her favor in an amount in excess of $75,000, together with interest and costs of suit.

### COUNT V: NEGLIGENCE
### (Nicholas Martino v. John Hammerschmidt)

52.  Plaintiffs incorporate by reference Paragraphs 1 through 51 of this Complaint.

53.  At the time of the accident, the wave runners were owned by and under the control of Hammerschmidt, who had the right and ability to permit or prohibit use of the wave runners by Craft.

54.  From the time that Hammerschmidt initially permitted Craft to use the wave runners up through and including July 15, 2000, Hammerschmidt knew or should have known that Craft, because of his inexperience operating the wave runners, reckless propensities and previous unsafe operation of the wave runners, would likely operate the wave runners in a manner involving unreasonable risk of physical harm to others, including Martino.

55.  Hammerschmidt acted unreasonably and negligently in permitting, or failing to prohibit, Craft's use of the wave runners.

-10-

56.  Hammerschmidt's negligent entrustment of the wave runners to Craft was the proximate cause of Martino's injuries and damage.

WHEREFORE, plaintiff, Nicholas Martino, requests that this Court enter judgment in his favor in an amount in excess of $75,000, together with interest and costs of suit.

### COUNT VI: NEGLIGENCE
### (Nicole Martino v. John Hammerschmidt)

57.  Plaintiffs incorporate by reference Paragraphs 1 through 56 of this Complaint.

58.  At the time of the accident, the wave runners were owned by and under the control of Hammerschmidt, who had the right and ability to permit or prohibit use of the wave runners by Craft.

59.  From the time that Hammerschmidt initially permitted Craft to use the wave runners up through and including July 15, 2000, Hammerschmidt knew or should have known that Craft, because of his inexperience operating the wave runners, reckless propensities and previous unsafe operation of the wave runners, would likely operate the wave runners in a manner involving unreasonable risk of physical harm to others, including Nicole.

60.  Hammerschmidt acted unreasonably and negligently in permitting, or failing to prohibit, Craft's use of the wave runners.

61.  Hammerschmidt's negligent entrustment of the wave runners to Craft was the proximate cause of Nicole's injuries and damage.

-11-

07/25/2002 12:46 FAX 6103258889          STATE FARM INS.                    ☑014

WHEREFORE, plaintiff, Nicole Martino, a minor, by Marybeth Martino, her guardian, requests that this Court enter judgment in her favor in an amount in excess of $75,000, together with interest and costs of suit.

## COUNT VII: LOSS OF CONSORTIUM
## (Marybeth Martino v. Richard Craft)

62.   Plaintiffs incorporate by reference Paragraphs 1 through 61 of this Complaint.

63.   At all relevant times, Craft owed a duty to Marybeth Martino to avoid interfering with her right to the aid, assistance, comfort, society, companionship and affection of her husband, Nicholas Martino.

64.   As set forth above, Craft acted unreasonably and negligently in his operation of the wave runner, proximately causing serious injury and damage to Martino, her husband.

65.   As a direct and proximate result of the negligent acts and omissions of Craft, as set forth in Paragraph 33 of the Complaint, Craft injured Martino in such a way as to deprive Marybeth Martino of her right to the aid, assistance, comfort, society, companionship and affection of her husband.

WHEREFORE, plaintiff, Marybeth Martino, requests that this Court enter judgment in her favor in an amount in excess of $75,000, together with interests and costs of suit.

## COUNT VIII: LOSS OF CONSORTIUM
## (Marybeth Martino v. John Hammerschmidt)

66.   Plaintiffs incorporate by reference Paragraphs 1 through 65 of this Complaint.

67.   At all relevant times, Hammerschmidt owed a duty to Marybeth Martino to avoid interfering with her right to the

aid, assistance, comfort, society, companionship and affection of her husband, Nicholas Martino.

68. As set forth above, Hammerschmidt acted unreasonably and negligently in permitting, or failing to prohibit, Craft's use of the wave runner, which proximately caused serious injury and damage to Martino.

69. As a direct and proximate result of Hammerschmidt's negligent entrustment of the wave runners, Nicholas Martino was injured in such a way as to deprive Marybeth Martino of her right to the aid, assistance, comfort, society, companionship and affection of her husband.

WHEREFORE, plaintiff, Marybeth Martino, requests that this Court enter judgment in her favor in an amount in excess of $75,000, together with interests and costs of suit.

OF COUNSEL:
Pelino & Lentz, P.C.
One Liberty Place
1650 Market Street
Thirty-Second Floor
Philadelphia, PA 19103-7393
215-665-1540

Howard A. Rosenthal
Kevin C. Rakowski
    Attorneys for Plaintiffs,
    Nicholas Martino and Nicole
    Martino, a minor, by her
    parent and guardian,
    Marybeth Martino and
    Marybeth Martino, in her
    own right

MARTINO #6

## STATE OF MARYLAND
## WATERCRAFT ACCIDENT REPORT

| RECREATIONAL ☐ | COMMERCIAL ☐ | BOTH ☐ | MO. DATE YEAR 07-16-00 | TIME (MILITARY) 1921 | DAY OF WEEK SAT | INCIDENT NUMBER 100017066 U |
|---|---|---|---|---|---|---|

| OTIFIED (MILIT) 1922 | ACCIDENT SEVERITY (8) ☐ Damage Only ☒ Incapacitating Inj. ☐ Possible Injury ☐ Fatal ☐ Non-incapacitating Inj. ☐ Missing | ACCIDENT TYPE (9) ☐ Grounding ☐ Sinking ☐ Collision Fix Object ☐ Falls in Boat ☐ Other (Specify) ☐ Capsizing ☐ Fire or Explosion ☐ Collision Flo Object ☐ Hit By Boat or Propeller ☐ Flooding ☒ Collision Vessel ☐ Falls Overboard ☐ Burns | COLLISION TYPE (10) ☐ Head On ☒ Angle ☐ Rear End ☐ Other ☐ Side Swipe |
|---|---|---|---|
| E ARRIVED (MILIT) 1956 | | | |

| TAL VESSELS VOLVED: 2 | LOCATION OF INCIDENT (BAY, RIVER, CREEK, COVE, LAKE, ETC.) SASSAFRASS RIVER | LOCATION CODE | NEAREST TOWN GALENA | COUNTY KE |
|---|---|---|---|---|

| MAGE TO PROPERTY HER THAN VESSEL) | OBJECT N/A | OWNER NAME (FIRST, MIDDLE, LAST & ADDRESS) N/A | DAMAGE SEVERITY ☐ Superficial ☒ Minor ☐ Moderate ☐ Destroyed |
|---|---|---|---|

## VESSEL NUMBER 1

| OPERATOR NAME (FIRST, MIDDLE, LAST) RICHARD ELLIS CRAFT | SEX M | DATE OF BIRTH MO. DAY YR. 01-28-60 | INJURY 1 | COND 2 | LICENSE NUMBER (SPECIFY) PA OLN 18791192 |
|---|---|---|---|---|---|

| DRESS (NUMBER AND STREET) 659 ANDOVER RD | CITY New Town SQUARE | STATE PA | ZIP CODE 19073 | HOME PHONE NUMBER 410-648-5647 |
|---|---|---|---|---|

| UPATION Martial Planner | EMPLOYER Wealth Advisory | ADDRESS 40 MONVMENT RD, | STATE PA | ZIP CODE 19073 | WORK PHONE NUMBER 616-353-3033 |
|---|---|---|---|---|---|

| LATOR BOATING EXPERIENCE NONE ☐ UNDER 20 HRS ☐ 20-100 HRS ☐ 100-500 HRS ☐ OVER 500 HRS ☒ | OPERATOR BOATING EDUCATION ☐ USCGA ☐ STATE ☐ USPS ☐ LICENSED N/A NONE ☐ OTHER ☐ |
|---|---|

| ERS NAME (FIRST, MIDDLE, LAST) (SAME AS OPERATOR) | ADDRESS (NUMBER AND STREET) | CITY | STATE | ZIP CODE | PHONE NUMBER |
|---|---|---|---|---|---|

| MAKE OF VESSEL YAMAHA | MODEL XA800Y | TYPE PWC | PWC ☒ YES ☐ NO | NAME OF VESSEL N/A | DOCUMENTED ☐ YES ☒ NO | REGIST. OR DOCUMENT NUMBER MD 2855 BL |
|---|---|---|---|---|---|---|

| OR PURP | HULL MAT'L 2 | FUEL 1 | YEAR 00 | LENGTH 10'5" | WIDTH 40" | DRAFT 12" | SERIAL NUMBER (HIN) YAMA 3165A000 | EST. DAMAGE ($) (BY WHOM) 50,00 |
|---|---|---|---|---|---|---|---|---|

| F ENGINES 1 | MAKE OF ENGINE YAMAHA | TYPE: ☐ OUTBOARD ☐ INBOARD/OUTBOARD ☒ INBOARD ☒ JET ☐ OTHER | HORSEPOWER 120 | YEAR 00 |
|---|---|---|---|---|

| TION OF TRAVEL West | POINT OF IMPACT PORT MID | P.O.B 2 | H.P. RATING N/A | LEGAL CAPACITY N/A | EST. SPEED 20 | VESSEL INSURED ☐ YES ☐ NO ☒ UNKNOWN |
|---|---|---|---|---|---|---|

| IBE DAMAGE TO VESSEL SCRAPES IN The STARBOARD Bow FIBERGLASS. | DAMAGE SEVERITY ☐ Disabling Damage ☐ Other Damage ☒ Functional Damage ☐ No Damage | NAME OF INSURANCE CO. AND AGENT N/A ADDRESS |
|---|---|---|

| . REMOVED TO N/A | BY N/A |
|---|---|

| ANT LOCATION  1A | OCCUPANT NAME 1.(A) RICHARD CRAFT 2. 3. 4. 5. 6. | ADDRESS | DOB 1-28-60 | SEX M | INJURY 1 | COND. 2 |
|---|---|---|---|---|---|---|

Operant locations by the letter "A" and locate by their respective number.

## CODES

| AL CODE ... 3 Aluminum -4 Steel Other | INJURY SEVERITY CODE 1. No Injury 4. Incapacitating Inj. 2. Possible Injury 5. Fatal 3. Non-Incapacitance 6. Missing | CONDITION CODE 1. Apparently Normal 4. Other handicaps 2. Had Been Drinking (Emotional prob., Etc.) 3. Physical Impairment | 6. ☐ 7. Fatigued 8. Apparently Asleep | FUEL CODE 1. Gasoline |
|---|---|---|---|---|

| VESSEL NUMBER 2 | INCIDENT NUMBER: |
|---|---|

OPERATOR NAME (FIRST, MIDDLE, LAST): NICHOLAS WALTER MARTINO
SEX: M
DATE OF BIRTH MO. DAY YEAR: 08-19-55
INJURY: 4
COND.: 1
LICENSE NUMBER (SPECIFY): PA OW/16 560602

ADDRESS (NUMBER AND STREET): 5 GREGORY LN
CITY: Newtown Square
STATE: PA
ZIP CODE: 19073
HOME PHONE NUMBER: 610-353-3098

OCCUPATION: SALES MAN
EMPLOYER: MERIT IN/I INDUSTRIES
ADDRESS: Be NSALEM
STATE: PA
ZIP CODE: N/A
WORK PHONE NUMBER: 215-633-N/A

OPERATOR BOATING EXPERIENCE:
[ ] NONE  [ ] UNDER 20 HRS  [ ] 20-100 HRS  [ ] 100-500 HRS  [ ] OVER 500 HRS

OPERATOR BOATING EDUCATION:
[ ] USCGA  [ ] STATE  [ ] USPS  [ ] LICENSED  [ ] NONE  [X] OTHER  N/A

OWNERS NAME (FIRST, MIDDLE, LAST): RICHARD CRAFT
ADDRESS (NUMBER AND STREET): 659 ANDOVER RD
CITY: Newtown Square
STATE: 
ZIP CODE: 
PHONE NUMBER: 610-

MAKE OF VESSEL: YAMAHA
MODEL: XA800Y
TYPE: PWC
PWC: [X] YES [ ] NO
NAME OF VESSEL: N/A
DOCUMENTED: [ ] YES [X] NO
REGIST. OR DOCUMENT NUMBER: MD 2852 BL

COLOR: T/NAME
HULL MAT'L: 2
FUEL: 1
YEAR: .00
LENGTH: 10'5"
WIDTH: 40"
DRAFT: 12"
SERIAL NUMBER (HIN): YAMA 3166A000
EST. DAMAGE ($) (BY WHOM): 150.00

OF ENGINES: 1
MAKE OF ENGINE: YAMAHA
TYPE: [ ] OUTBOARD  [ ] INBOARD/OUTBOARD  [X] INBOARD  [ ] JET  [ ] OTHER
HORSEPOWER: 120
YEAR: 00

DIRECTION OF TRAVEL: SOUTHWEST
POINT OF IMPACT: PORT MID
P.O.B.: 2
H.P. RATING: N/A
LEGAL CAPACITY: N/A
EST. SPEED: 20 KNOTS
VESSEL INSURED: [ ] YES [ ] NO [X] UNKNOWN

DESCRIBE DAMAGE TO VESSEL: SCRAPES TO PORT mid Fiberglass, TORN SEAT.
DAMAGE SEVERITY:
[ ] Disabling Damage  [ ] Other Damage
[X] Functional Damage  [ ] No Damage
NAME OF INSURANCE CO. AND AGENT: N/A
ADDRESS:

VESSEL REMOVED TO:
BY:

OCCUPANT LOCATION:

(1A) (2)

to Operator location by the letter "A" and
ant location by their respective number.

| OCCUPANT NAME | ADDRESS | DOB | SEX | INJURY |
|---|---|---|---|---|
| 1. NICHOLAS MARTINO | 5 Gregory LN, Newtown Square PA | 8-19-55 | M | 4 |
| 2. NICCLE MARTINO | " " " | 4-25-90 | F | 1 |
| 3. | | | | |
| 4. | | | | |
| 5. | | | | |
| 6. | | | | |

| NAME | ADDRESS | DOB | TELEPHONE |
|---|---|---|---|
| 1. | | | |
| 2. | | | |
| 3. | N/A | | |
| 4. | | | |
| 5. | | | |
| 6. | | | |

S TAKEN?
[X] Yes
[ ] No

INVESTIGATED AT SCENE?
[X] Yes
[ ] No

INVESTIGATION COMPLETE?
[X] Yes
[ ] No

| ALCOHOL TEST | 1 | 2 | VICTIM | 1 | 2 | VICTIM |
|---|---|---|---|---|---|---|
| | [X] | [X] | None Offered | [ ] | [ ] | Post Mortem |
| | [ ] | [ ] | Blood | [ ] | [ ] | Refused |
| | [ ] | [ ] | Breathalyzer | | | |

TEST RESULTS
1. ___ BAC
2. N/A BAC
Victim ___ P

| CODES |
|---|

HULL CODE: 3. Aluminum  4. Steel
INJURY SEVERITY CODE: 1. No Injury  2. Possible Injury  4. Incapacitating Inj.  5. Fatal
CONDITION CODE: 1. Apparently Normal  2. Had Been Drinking  4. Other handicaps (Emotional prob. Etc.)  6. Ill  7. Fatigued  8. Apparently Asleep
FUEL CODE: 1. Gasoline  2. Diesel

INCIDENT NUMBER **100017066 U**

## OPERATION AT TIME OF ACCIDENT

| | 2 | 1 | 2 |
|---|---|---|---|
| CRUISING | ☐ | ☐ | FUELING |
| APPROACHING DOCK | ☐ | ☐ | FISHING/HUNT |
| LEAVING DOCK | ☐ | ☐ | WATER SKIING |
| RACING | ☐ | ☐ | SCUBA DIVING |
| TOWING | ☐ | ☐ | SWIMMING |
| BEING TOWED | ☒ | ☒ | MANEUVERING |
| AT ANCHOR | ☐ | ☐ | DRIFTING |
| TIED TO DOCK | ☐ | ☐ | UNKNOWN |
| WHITEWATER OPERATION | ☐ | ☐ | OTHER (Specify) |

### WEATHER
☐ Clear
☒ Cloudy
☐ Rain
☐ Snow
☐ Hazy
☐ Fog
☐ Unknown

### WIND
☐ None
☒ Light (0-6 MPH)
☐ Moderate (7-15 MPH)
☐ Strong (15-25 MPH)
☐ Storm (Over 25 MPH)
☐ Unknown

Wind Direction **West**
Est. Air Temp **80**

### WATER
☒ Calm
☐ Choppy
☐ Rough
☐ Very Rough
☐ Strong Current
☐ Flood
☐ Ebb
☐ Unknown

Est. Temp **68**

### LIGHT
☒ Day
☐ Dawn
☐ Dusk
☐ Dark
☐ Moon
☐ Artificial
☐ Unknown

## TRAFFIC
none
light
Medium
Heavy
Congested
Unknown

### REQUIRED EQUIPMENT ON BOARD

| | VESSEL 1 Yes | No | Used | Unk | VESSEL 2 Yes | No | Used | Unk | |
|---|---|---|---|---|---|---|---|---|---|
| | ☒ | ☐ | ☒ | ☐ | ☒ | ☐ | ☐ | ☐ | Personal Flotation Devices |
| | ☐ | ☐ | ☐ | ☐ | ☒ | ☐ | ☐ | ☐ | Victim Wearing PFD |
| | ☒ | ☐ | ☐ | ☐ | ☒ | ☐ | ☐ | ☐ | Fire Extinguishing Device |
| | ☒ | ☐ | ☐ | ☐ | ☐ | ☒ | ☐ | ☐ | Flame Arrestor |
| | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | Navigation (Lights, Shapes, Whistles, Foghorns, Bells, etc) |

### CONTRIBUTING FACTORS

| | 1 | 2 | | | 1 | 2 | |
|---|---|---|---|---|---|---|---|
| | ☐ | ☐ | Excessive Speed | | ☐ | ☐ | Fault of Hull |
| | ☐ | ☐ | No Proper Lookout | | ☐ | ☐ | Fault of Machinery |
| | ☐ | ☐ | Operator Inattention | | ☐ | ☐ | Fault of Equipment |
| | ☐ | ☐ | Operator Inexperience | | ☐ | ☐ | Wake |
| | ☐ | ☐ | Negligent/Reckless Operation | | ☐ | ☐ | Weather Conditions |
| | ☐ | ☐ | Overloading | | ☐ | ☐ | Hazardous Waters |
| | ☐ | ☐ | Improper loading | | ☐ | ☐ | Unknown |
| | ☐ | ☐ | Alcohol Use | | ☐ | ☐ | None Indicated |
| | ☐ | ☐ | Drug Use | | ☐ | ☐ | Other (Specify) |
| | ☐ | ☐ | Fault of Other Person | | | | |

## AID ADMINISTERED BY:
Police ☐ Refused
Fireman ☒ None
Ambulance Personnel ☐ Unknown ☐ Other (Specify)

Could swim? ☐ Yes ☐ No ☐ Unk

TIME EMS REQUESTED: **1921**
EMS ARRIVED TIME: **1935**

INJURED TAKEN BY: **MSP Trooper 6**
INJURED TAKEN TO: **BALTIMORE SHOCK TRAUMA**

CHARGE - LIST SECTION
1 ☒ Yes **NR8-704/08.18.02.05L** ☐ No
CHARGE - LIST SECTION
2 ☒ Yes **NR 8-704/08.18.02.05L** ☐ No

## DIAGRAM (Label the vessel(s) with their respective number 1, 2, etc.)

SHOW NORTH BY ARROW ↑

MB2852BL

MB2855BL

INCIDENT NUMBER:  100017066 U

NARRATIVE DESCRIPTION

MR. RICHARD CRAFT WAS THE OPERATOR OF VESSEL #1 MD 2855 BL,
MR. NICHOLAS MARTINO WAS THE OPERATOR OF VESSEL #2 MD 2852 BL.

BOTH INDIVIDUALS WERE SITTING ALONG SIDE EACH OTHER AT THE SASSAFRASR
TALKING. THEY BOTH TOOK OFF AT THE SAME TIME UP ON PLANE, ESTIMATED SPEED
WAS APROX. 20 KNOTS. BOTH SKIS TURNED INTO ONE ANOTHER. MR CRAFT'S SKI
STRUCK MR. MARTINO'S SKI ON ITS PORT MID SIDE. THERE WAS DAMAGE TO THE
PORT MID SIDE FIBER GLASS AND A TEAR IN THE SEAT ALONG WITH PAINT TRANSER
MR. CRAFT'S SKI RECEIVED DAMAGE TO THE STARBOARD BOW (CHIPS IN THE FIBER GLASS)
AS A RESULT MR. MARTINO WAS FLOWN TO SHOCK TRAUMA IN BALTIMORE AND
TREATED FOR A BROKEN LEG.

| BOATING ACCIDENT REPORT) GIVEN TO: | VESSEL 1 Yes No | VESSEL 2 Yes No | VESSEL Yes No | SUPPLEMENTAL REPORT ATTACHED Yes No | STATUS |
|---|---|---|---|---|---|
| | ☒ ☐ | ☒ ☐ | ☐ ☐ | ☐ ☒ | OPEN ☐ CLOSED ☒ SUSPENDED ☐ |

| INVESTIGATING OFFICER | ID NUMBER | REPORTING AGENCY | DATE |
|---|---|---|---|
| L. ROBERT KERSEY | 1316 | NRP | 7-15-00 |

| REVIEWED BY: (Criminal Investigator's Signature) | ID NUMBER | ASSISTING WITH INVESTIGATION | DATE |
|---|---|---|---|
| Robert Alexander | 1227 | YES ☐  NO ☒ | 7-27-00 |

| SUPERVISOR | DATE | APPROVED BY | DATE |
|---|---|---|---|
| | 7-26-00 | Lt. Q Bong | 7/30/00 |

# Exhibit B

NICHOLAS MARTINO

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
CIVIL ACTION NO. 02-4633

| | |
|---|---|
| NICHOLAS MARTINO;<br>NICOLE MARTINO, a minor,<br>by Marybeth Martino, her<br>parent and natural guardian,<br>and MARYBETH MARTINO,<br><br>       Plaintiffs,<br><br>    - vs -<br><br>RICHARD CRAFT and<br>JOHN HAMMERSCHMIDT,<br><br>       Defendants. | DEPOSITION UPON<br><br>ORAL EXAMINATION<br><br>     OF<br><br>NICHOLAS MARTINO |

- - - - - - - - - - - - - -

TRANSCRIPT OF DEPOSITION, taken by and

before SHAMEKA MASON, Certified Court Reporter and

Notary Public, at the Law Offices of BENNETT,

BRICKLIN & SALTZBURG, 1601 Market Street, 16th

Floor, Philadelphia, Pennsylvania, on Monday, July

21, 2003, commencing at 10:09 a.m. ORIGINAL

REPORTING SERVICE ASSOCIATES (RSA)
A Veritext Company
1845 Walnut Street-15th Floor
Philadelphia, PA 19103
(215) 241-1000

NICHOLAS MARTINO

28

1    house?

2    A.      I don't.

3    Q.      Can you tell me a little bit more about the

4    conversation you had with Rick about using the

5    WaveRunner?  Where were you?  How did it unfold?

6    What was said?

7    A.      We were in the house.  The rain stopped and

8    essentially there was an opportunity then to go

9    out on the WaveRunners.  And we both agreed that

10   yes, let's go out on the WaveRunners.  The river

11   was empty and so we went out, put them in the

12   water and went out.

13   Q.      There's a pool at the house, correct?

14   A.      Yes.  There is.

15   Q.      Were people using the pool and otherwise

16   using the other facilities that were available at

17   the house before you put in WaveRunners into the

18   water?

19   A.      When Marybeth and I and Nicole arrived,

20   they were sitting around the pool.  We sat around

21   the pool with them, spoke for a while and then

22   they gave us a tour of the home and we sort of

23   settled in.

24   Q.      Did you have anything to eat there before

NICHOLAS MARTINO

29

1    you operated the WaveRunner?

2    A.      Not at their home.  We had some lunch on

3    the way down.

4    Q.      Did you have anything to drink before you

5    -- between the time you arrived and the time that

6    you operated the WaveRunner of an alcoholic

7    nature?

8    A.      I had one gin and tonic.

9    Q.      What size, if you remember?

10   A.      I don't recall.

11   Q.      Did you make it yourself or someone gave it

12   to you?

13   A.      I can't remember that.

14   Q.      It was one drink?

15   A.      Yes.

16   Q.      About how long before you operated the

17   WaveRunner did you finish the drink?

18   A.      About an hour.

19   Q.      Did you see Mr. Craft drink anything of an

20   alcoholic nature before -- while you were present

21   but before he operated the WaveRunner?

22   A.      We were all socializing, so yes.

23   Q.      Do you know how many things you saw him

24   drink?

# Exhibit C

Martino, et al. vs Craft, et al.

# COPY

Richard Craft
07/24/2003

Page 1

```
 1    UNITED STATES DISTRICT COURT
      FOR THE EASTERN DISTRICT OF PENNSYLVANIA
 2
      Civil Action No. 02-4633
 3    ---------------------------------x
      NICHOLAS MARTINO, et. al,                :
 4                                             :
                    Plaintiff,                 :
 5                                             :
              - vs -                           :
 6                                             :
      RICHARD CRAFT, et. al,                   :
 7                                             :
                                               :
 8                  Defendant,                 :
      ---------------------------------x
 9
```

```
10    _____

11             Deposition Testimony of RICHARD CRAFT

12    _____

13    1601 Market Street              July 24, 2003
      Philadelphia, PA                10:16 a.m.
14

15         IT IS HEREBY STIPULATED and agreed that the
      reading, sealing, and signing of the within
16    transcript are waived;
           IT IS FURTHER STIPULATED and agreed that all
17    objections except as to the form of the question
      are reserved to the time of trial.
18    _____
19
20
21
22
23               LEARY REPORTING
            112 West Main Street, Ste. 200
24         Mechanicsburg, Pennsylvania  17055
25         (717) 233-2660    Fax (717) 691-7768
```

Martino, et al. vs Craft, et al.

Richard Craft
07/24/2003

Page 50

```
1    careful.  It's a little bit second nature.
2         Q    You said it's like second nature.
3    Is that what you just said?
4         A    You asked me if I had any need to
5    caution him, and I said no.  You know if you're
6    going fast because you feel it and you know if
7    you are going slow.  It was kind of irrelevant.
8         Q    In your experience operating the
9    wave runners, does common sense play a role in
10   determining that kind of thing?
11             MS. CARLOS:  Objection.
12        A    Certainly sense is a good attribute.
13        Q    How long were you two out there just
14   by yourselves?
15        A    Probably greater than ten minutes
16   and less than 20 minutes.  I don't wear a watch.
17   I can't be specific.
18        Q    I understand that.  Did you have any
19   alcoholic beverages before you took the wave
20   runner out?
21        A    I think I had one, yes.
22        Q    Do you know what it was?
23        A    I think it was a rum drink.
24        Q    Do you know if Mr. Martino had any
25   alcoholic beverages before he took it out?
```

Martino, et al. vs Craft, et al.

Page 51

| | | |
|---|---|---|
| 1 | A | Yes. |
| 2 | Q | Yes? |
| 3 | A | Yes. |
| 4 | Q | Do you know how many? |
| 5 | A | Just one or two. |
| 6 | Q | Do you know what he was drinking? |
| 7 | A | Gin, I believe. |
| 8 | Q | Were other people, and by that I |

9  strictly mean the adults, drinking at the house
10  at the same time you and Mr. Martino had those
11  beverages?

| | | |
|---|---|---|
| 12 | A | Yes. |
| 13 | Q | Did you make your own rum drink? |
| 14 | A | I did. |
| 15 | Q | Did you make Mr. Martino's gin |

16  drink?

| | | |
|---|---|---|
| 17 | A | I don't remember. |
| 18 | Q | Then I assume you don't know who |

19  did?

| | | |
|---|---|---|
| 20 | A | Correct. |
| 21 | Q | Is the rum drink the only drink that |

22  you had before you went out on the wave runner?

| | | |
|---|---|---|
| 23 | A | Yes. |
| 24 | Q | Did you have the rum at the house or |

25  did you have to go to the liquor store to get it?

**Exhibit D**

NICHOLAS MARTINO

1    go to Saturday morning.  I believe it was a

2    make-up swim meet.  So we were with her.

3    Q.    Your daughter being Nicole?

4    A.    Nicole.  At our country club.

5    Q.    Had you had a full night's sleep the night

6    before as well?

7    A.    Yes.

8    Q.    Were you taking any kind of medication on

9    July 15, 2000?

10   A.    No.

11   Q.    Before you operated the WaveRunners by

12   yourselves, did you feel impaired in any capacity

13   as a result of the gin and tonic or anything else?

14   A.    No.

15   Q.    Was there anything about how Mr. Craft was

16   behaving, in your observation, that led you to

17   believe that he was impaired in any capacity to

18   operate the WaveRunner?

19   A.    No.

20   Q.    When Nicole got on the WaveRunner and you

21   set out for your ride, did you feel comfortable

22   with having her on there with you?

23   A.    I felt sufficiently familiar with the

24   WaveRunner being out prior to that.  Yes.

# Exhibit E

MARYBETH MARTINO

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
CIVIL ACTION NO. 02-4633

| | |
|---|---|
| NICHOLAS MARTINO;<br>NICOLE MARTINO, a minor,<br>by Marybeth Martino, her<br>parent and natural guardian,<br>and MARYBETH MARTINO,<br><br>  Plaintiffs,<br><br>- vs -<br><br>RICHARD CRAFT and<br>JOHN HAMMERSCHMIDT,<br><br>  Defendants. | DEPOSITION UPON<br><br>ORAL EXAMINATION<br><br>OF<br><br>MARYBETH MARTINO |

- - - - - - - - - - - - - -

TRANSCRIPT OF DEPOSITION, taken by and

before SHAMEKA MASON, Certified Court Reporter and

Notary Public, at the Law Offices of BENNETT,

BRICKLIN & SALTZBURG, 1601 Market Street, 16th

Floor, Philadelphia, Pennsylvania, on Monday, July

21, 2003, commencing at 4:36 p.m. ORIGINAL

REPORTING SERVICE ASSOCIATES (RSA)
A Veritext Company
1845 Walnut Street-15th Floor
Philadelphia, PA 19103
(215) 241-1000

MARYBETH MARTINO

45

1    drink something alcoholic before he operated the

2    WaveRunner?

3    A.    That was the last drink I saw him drink.

4    Q.    Do you know how long that was before he

5    went out on the WaveRunner?

6    A.    It was maybe an hour before.

7    Q.    Did you have an opportunity -- other than

8    when he said to Nick come on, let's take the

9    WaveRunners out, did you have an opportunity to

10    see him as he -- he being Mr. Craft -- got ready

11    to get on the WaveRunner that day?

12    A.    Yes.

13    Q.    Did he appear to you to be impaired in any

14    fashion?

15    A.    No.

16    Q.    Did your husband appear to you to be

17    impaired in any fashion?

18    A.    No.

19    Q.    How long were they gone with the children

20    before you knew something was wrong?

21    A.    They weren't gone that long.  We stood

22    outside and watched them for a while, and then

23    they went down the river and then we went inside

24    because we were just getting dinner.  Dinner was

# Exhibit F

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Nicholas Martino, et al.                    :        03 AUG 18 PM 9: 51
                                            :
                    Plaintiffs              :        Civil Action No.
                                            :
        v.                                  :        02-CF-V4633
                                            :
                                            :
Richard Craft, et al.                       :
                                            :
                    Defendants.             :

---

## PLAINTIFF'S PRETRIAL MEMORANDUM

---

Pursuant to this Court's Order dated June 17, 2003, plaintiffs submit this Pretrial Memorandum in accordance with Local Civil Rule 16(c).

### BRIEF STATEMENT OF CLAIMS.

Plaintiffs brought this action against defendants Richard Craft and John Hammerschmidt for injuries and damages sustained by Nicholas Martino and Nicole Martino due to the negligent operation of a watercraft known as a "wave runner" by Richard Craft ("Craft") and negligent entrustment of the wave runner by John Hammerschmidt ("Hammerschmidt") to Craft. This Court has jurisdiction pursuant to Article III, Section 2 of the United States Constitution and 28 U.S.C. § 1333, as the events pertaining to this action occurred on the Sassafras River, a navigable waterway, and were significantly related to traditional maritime activity.

Craft and Hammerschmidt are likewise liable to Marybeth Martino for the damages she incurred due to the loss of society, assistance, aid, and comfort of her husband Nicholas Martino as a result of the severe injuries Nicholas Martino endured due to

defendants' negligence.[1]

## BRIEF STATEMENT OF FACTS.

Nicholas Martino was born on August 19, 1955 and is presently 48 years of age. Prior to the accident, Nicholas was a successful executive, specializing in international business development. He enjoyed an active family and social life with his wife Marybeth Martino and children Nicole and Kathy. On July 15, 2000, Nicholas' life forever changed when he took what he expected would be a relaxing weekend visit with his family and the Craft family a vacation home in Galena, Maryland, located on the Sassafras River, owned by Craft and Hammerschmidt. Located at the vacation home were a pair "wave runners" owned solely by Hammerschmidt.

Late in the afternoon on July 15, 2000, Nicholas and his daughter, Nicole, and Craft and his son, took both wave runners out on the Sassafras River. At the end of their ride, Nicholas and Craft met at a point up river from the Craft residence and stopped, side by side parallel to the river bank, to discuss returning to the house for dinner. The Martino's wave runner was situated to the right of Craft, several feet from the south bank of the River.

After discussing returning to the house, Craft instructed Nicholas, who was unfamiliar with that particular waterway, that he would have to make a left turn towards the house, requiring Nicholas to cross in front of Craft, as the bank was too close

---

[1]The parties have agreed to settle the claims of the minor, Nicole Martino. Settlement documents are being finalized, along with the minor's compromise, which will be submitted to the Court for approval.

and the water too shallow for Nicholas to maneuver the wave runner in the direction of the Craft residence.

Nicholas Martino then began to proceed forward and make a left turn in order to head down river. As he was crossing in front of Craft's wave runner, Craft, abruptly and without warning, accelerated and crashed his wave runner into the left side of the Martinos' wave runner, striking Nicholas' leg with the bow of the Craft wave runner. The collision caused a severe "type three" open tibia fracture of Nicholas' left leg. Nicole's left leg also was broken by the impact of the Craft wave runner.

Bleeding profusely, and with a portion of his tibia bone protruding through the skin, Nicholas had to reposition the bone back into his leg and subsequently drive his wave runner back to the Craft residence. A local EMT team performed emergency treatment until Nicholas could be taken by medivac helicopter to the R. Adams Crowley Shock Trauma Center in Baltimore, Maryland, where he spent the next several weeks receiving multiple surgical procedures in an effort to save his leg.

Since the accident caused by defendants, Nicholas has endured more than 23 surgeries, including the application of multiple fixation devices and braces, bone and skin grafting, placement of a catheter for antibiotic treatment. Nicholas not only anticipates future surgery but also, as he currently suffers from osteomyelitis (a permanent bone infection caused by contamination of the open wound by river water which has flared-up twice requiring aggressive antibiotic treatment each time), it is anticipated that he will more likely than not require amputation of the left leg below the knee. Martino continues to

have difficulty walking, is limited in his daily activities and in the number of hours he can work.

Craft and Hammerschmidt's negligent conduct solely and proximately caused the Martinos' injuries and damage. The evidence will show that Craft negligently drove his wave runner (which Hammerschmidt owned) directly into the wave runner operated by Nicholas, and on which Nicole Martino was a passenger. The evidence will show that Craft operated his wave runner in an unsafe and reckless manner and failed to keep a proper lookout for the Martinos, keep control of the wave runner and maintain proper course and speed.

Since that date. Nicholas has endured, and will continue to endure, exceptional pain, suffering and loss. These injuries have also directly affected his family, including his wife, Marybeth, who has suffered through her husband's inability to perform his family obligations and duties, and the lost companionship and society of the marriage.

### DAMAGES.

Plaintiffs have sustained the following damages as a direct and proximate result of defendants' negligence:

1. Costs for medical treatments associated with Nicholas Martino's physical injury in the amount of $590,498.02.

2. Lost income and benefits, including past and future earnings, in the amount of $1,752,341.

3. Damages in an amount of $206,743 resulting from Nicholas' inability to perform certain household functions due to his injuries.

4. Damages in an amount to be determined by the jury

for pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of consortium, and other nonpecuniary losses suffered by Nicholas and Marybeth Martino as a result of the defendants' unlawful conduct.

**WITNESSES.** [2]

A.  **Liability.**

1.  Nicholas Martino
    5 Gregory Lane
    Newtown Square, PA 19073

Mr. Martino will testify concerning the circumstances surrounding the collision on July 15, 2000, his injuries, his treatments and the consequences of the injury.

2.  Marybeth Martino
    5 Gregory Lane
    Newtown Square, PA 19073

Mrs. Martino will testify concerning the circumstances surrounding the collision on July 15, 2000, Nicholas Martino's injuries, and the consequences of the injury, including the loss of Mr. Martino's aid, society and companionship.

3.  Nicole Martino
    5 Gregory Lane
    Newtown Square, PA 19073

Nicole Martino will testify regarding the circumstances surrounding the collision on July 15, 2000.

4.  Donald A. Kovalski, M.D.
    Falcon Center
    525 West Chester Pike
    Suite 203
    Havertown, PA 19083

---

[2] Plaintiffs reserve the right to call any witnesses identified by defendants and additional witnesses in their case in chief to the extent information subsequently disclosed by defendants requires the introduction of additional testimony by plaintiffs. Moreover, plaintiffs reserve the right to identify and call additional witnesses for purposes of rebuttal.

5.    Alan L. Jones, M.D.
      22 South Greene Street
      Baltimore, MD 21201

6.    Stephen Harlin, M.D.
      Marple Commons
      2000 Sproul Road
      Suite 200
      Broomall, PA 19008

7.    Lawrence Mayer, M.D.
      2100 Keystone Avenue
      Suite 407
      Drexel Hill, PA 19026

8.    Bradley C. Robertson, M.D.
      University of Maryland Shock and Trauma
      Plastic Surgery
      22 South Greene Street
      Baltimore, MD 21201

9.    Joan C. Waller, M.D.
      2100 Keystone Avenue
      Suite 407
      Drexel Hill, PA 19026

Each of these individuals are expected to testify as to the injuries sustained by Nicholas Martino as a result of the accident.

10.    Custodians of Records.

The Custodian of Records of each and every medical provider that has treated or seen Mr. Martino will be called in the event defendants do not stipulate as to the authenticity and admissibility of Mr. Martino's medical records and bills.

11.    EMT Technicians and Helicopter Pilots.

The EMT Technicians and Helicopter Pilots who were at the scene of the July 15, 2000 accident will testify as to the facts and circumstances upon their arrival at the Craft residence as well as their treatment and transportation of Nicholas Martino.

-6-

12.   Christopher T. Born, M.D.
Penn Medicine at Cherry Hill
Department of Orthopaedic Surgery
409 Route 70 East
Cherry Hill, NJ 008034

Dr. Born will testify that the physical injuries sustained by Nicholas Martino were caused by the accident occurring on July 15, 2000, including the osteomyelitis from which Martino now suffers and the likelihood that, as a result of defendants' negligence, Martino's left leg will need to be amputated in the future.

13.   Dr. Kenneth W. Fisher, President
Fisher Maritime Transportation
147 Columbia Turnpike, Suite 203
Florham Park, NJ 07932

Dr. Fisher will testify regarding Craft's negligent operation of the wave runner in violation of accepted navigational principles.

14.   Mr. Richard Craft
659 Andover Road
Newtown Square, PA 19073-1411

Craft may be called, as of cross-examination, to testify regarding the accident.

15.   John Hammerschmidt
7 Greenbriar Lane
Paoli, PA   19301

Hammerschmidt may be called, as of cross-examination, to testify regarding his knowledge of Craft's use of the wave runners.

16.   Mrs. Regina Craft
659 Andover Road
Newtown Square, PA 19073-1411

Mrs. Craft may be called as of cross-examination, to testify regarding the accident.

17.   Bryson Craft
      659 Andover Road
      Newtown Square, PA 19073-1411

Mr. Craft may be called, as of cross-examination, to testify regarding the accident.

**B.    Damages.**[3]
1.   Nicholas Martino
     5 Gregory Lane
     Newtown Square, PA 19073

Mr. Martino will testify regarding all aspects of his claims for damages in this case, including past and future medical costs, his employment and wage history, his current physical limitations and the pain and suffering he endured, and continues to endure, as a result of the accident.

2.   Irene C. Mendelsohn, M.S., CRC
     1226 N. Woodbine Avenue
     Penn Valley, PA 19072

Ms. Mendelsohn will testify to Mr. Martino's vocational limitations as a result of the injuries he sustained in the accident.

3.   David Crawford, Ph.D.
     Econsult Corporation
     3600 Market Street
     Philadelphia, PA 19104

Dr. Crawford will testify as to the economic damages which Nicholas Martino suffered as a result of the defendants' negligence.

---

[3]Plaintiffs reserve the right to call any of the witnesses as to liability also as to damages.

-8-

2.    Plaintiffs intend to file a Motion In Limine seeking to preclude defendants from introducing any evidence or testimony related to Marybeth Martino's prior marital status.

3.    Plaintiffs intend to file a Motion In Limine seeking to preclude defendants from introducing any testimony or evidence relating to prior litigation and awards received by Marybeth Martino.

4.    Plaintiffs intend to file a Motion In Limine seeking to preclude defendants from introducing any evidence or testimony related to or referring to any treatment Nicholas Martino received from Frederic J. Kwapien, M.D.

### ESTIMATE OF TRIAL TIME.

Plaintiff estimates that the trial can be completed in four days.


**OF COUNSEL:**
Pelino & Lentz, P.C.
One Liberty Place
1650 Market Street
Thirty-Second Floor
Philadelphia, PA 19103-7393
215-665-1540

Howard A. Rosenthal
Darin J. McMullen
Kevin C. Rakowski
 Attorneys for Plaintiffs,

**Exhibit G**

# STATE OF MARYLAND
## WATERCRAFT ACCIDENT REPORT

| ☒RECREATIONAL ☐COMMERCIAL ☐BOTH | MO DATE YEAR 07-16-00 | TIME (MILITARY) 1921 | DAY OF WEEK SAT | INCIDENT NUMBER 10017066 U |
|---|---|---|---|---|

NOTIFIED (MILIT) 1922
TIME ARRIVED (MILIT) 1956

ACCIDENT SEVERITY (8): ☐Damage Only ☒Incapacitating Inj. ☐Possible Injury ☐Fatal ☐Non-incapacitating Inj. ☐Missing

ACCIDENT TYPE (9): ☐Grounding ☐Sinking ☐Collision Fix Object ☐Falls in Boat ☐Other (Specify) ☐Capsizing ☐Fire or Explosion ☐Collision Flo Object ☐Hit By Boat or Propeller ☐Flooding ☒Collision Vessel ☐Falls Overboard ☐Burns

COLLISION TYPE (10): ☐Head On ☒Angle ☐Rear End ☐Other ☐Side Swipe

TOTAL VESSELS INVOLVED: 2

LOCATION OF INCIDENT: SASSAFRASS RIVER
LOCATION CODE: 
NEAREST TOWN: GALENA
COUNTY: KE

DAMAGE TO PROPERTY OTHER THAN VESSEL
OBJECT: N/A
OWNER NAME: N/A
DAMAGE SEVERITY: ☐Superficial ☐Minor ☐Moderate ☐Destroyed

## VESSEL NUMBER 1

OPERATOR NAME: RICHARD ELLIS CRAFT  SEX M  DOB 01-28-60  INJURY 1  COND 2  PA  LICENSE NUMBER: OLN 18791 192

ADDRESS: 659 ANDOVER RD  CITY New Town Square  STATE PA  ZIP 19073  HOME PHONE 410-648-5647

OCCUPATION: Financial Planner  EMPLOYER: Wealth Advisory  ADDRESS: 40 Monument Rd,  STATE PA  ZIP 19073  WORK PHONE 616-353-3033

OPERATOR BOATING EXPERIENCE: ☐NONE ☐UNDER 20 HRS ☐20-100 HRS ☐100-500 HRS ☒OVER 500 HRS
OPERATOR BOATING EDUCATION: ☐USCGA ☐STATE ☐USPS ☐LICENSED ☐NONE ☐OTHER  N/A

OWNERS NAME: (SAME AS OPERATOR)  CITY  STATE  ZIP CODE  PHONE NUMBER

MAKE OF VESSEL: YAMAHA  MODEL: XA800Y  TYPE: PWC  PWC ☒YES ☐NO  NAME OF VESSEL: N/A  DOCUMENTED ☐YES ☒NO  REGIST. OR DOCUMENT NUMBER: MD 2855 BL

COLOR: WHT/PURP  HULL MAT'L: 2  FUEL: 1  YEAR: 00  LENGTH: 10'5"  WIDTH: 40"  DRAFT: 12"  SERIAL NUMBER (HIN): YAMA 3165A000  EST. DAMAGE ($): 50.00

NO. OF ENGINES  MAKE OF ENGINE: YAMAHA  TYPE: ☐OUTBOARD ☐INBOARD/OUTBOARD ☐INBOARD ☒JET ☐OTHER  HORSEPOWER: 120  YEAR: 00

DIRECTION OF TRAVEL: WEST  POINT OF IMPACT: PORT MID  P.O.B: 2  H.P. RATING: N/A  LEGAL CAPACITY: N/A  EST. SPEED: 20  VESSEL INSURED ☐YES ☐NO ☒UNKNOWN

DESCRIBE DAMAGE TO VESSEL: SCRAPES IN THE STARBOARD BOW FIBERGLASS.
DAMAGE SEVERITY: ☐Disabling Damage ☐Other Damage ☒Functional Damage ☐No Damage
NAME OF INSURANCE CO. AND AGENT: N/A  ADDRESS:

VESSEL REMOVED TO: N/A  BY: N/A

OCCUPANT LOCATION | OCCUPANT NAME | ADDRESS | DOB | SEX | INJURY | COND |
|---|---|---|---|---|---|
| 1(A) RICHARD CRAFT | | 1-28-60 | M | 1 | 2 |
| 2. | | | | | |
| 3. | | | | | |
| 4. | | | | | |
| 5. | | | | | |
| 6. | | | | | |

CODES

SERIAL CODE: 1 Wood 3 Aluminum 2 Fiberglass 4 Steel 5 Other

INJURY SEVERITY CODE: 1. No Injury 2. Possible Injury 3. Non-Incapacitating 4. Incapacitating Inj. 5. Fatal 6. Missing

CONDITION CODE: 1. Apparently Normal 2. Had Been Drinking 3. Physical Defects 4 Other handicaps (Emotional prob. Etc.) 5 Conditions Unknown 6. Ill 7. Fatigued 8. Apparently Asleep 9. Using Drugs

FUEL CODE: 1. Gasoline 2. Diesel

| INCIDENT NUMBER | 1 0 0 0 1 7 0 6 6   U |
| --- | --- |

## OPERATION AT TIME OF ACCIDENT

| 1 | 2 | | 1 | 2 | |
| --- | --- | --- | --- | --- | --- |
| [ ] | [ ] | CRUISING | [ ] | [ ] | FUELING |
| | [ ] | APPROACHING DOCK | [ ] | [ ] | FISHING/HUNT |
| [ ] | [ ] | LEAVING DOCK | [ ] | [ ] | WATER SKIING |
| [ ] | [ ] | RACING | [ ] | [ ] | SCUBA DIVING |
| [ ] | [ ] | TOWING | [ ] | [ ] | SWIMMING |
| [ ] | [ ] | BEING TOWED | [X] | [X] | MANEUVERING |
| [ ] | [ ] | AT ANCHOR | [ ] | [ ] | DRIFTING |
| [ ] | [ ] | TIED TO DOCK | [ ] | [ ] | UNKNOWN |
| [ ] | [ ] | WHITEWATER OPERATION | [ ] | [ ] | OTHER (Specify) |

### WEATHER
- [ ] Clear
- [X] Cloudy
- [ ] Rain
- [ ] Snow
- [ ] Hazy
- [ ] Fog
- [ ] Unknown

### WIND
- [ ] None
- [X] Light (0-6 MPH)
- [ ] Moderate (7-15 MPH)
- [ ] Strong (15-25 MPH)
- [ ] Storm (Over 25 MPH)
- [ ] Unknown

Wind Direction  _West_

Est. Air Temp  _80_

### WATER
- [X] Calm
- [ ] Choppy
- [ ] Rough
- [ ] Very Rough
- [ ] Strong Current
- [ ] Flood
- [ ] Ebb
- [ ] Unknown

Est. Temp  _68_

### LIGHT
- [X] Day
- [ ] Dawn
- [ ] Dusk
- [ ] Dark
- [ ] Moon
- [ ] Artificial
- [ ] Unknown

## TRAFFIC
- [ ] None
- [X] Light
- [ ] Medium
- [ ] Heavy
- [ ] Congested
- [ ] Unknown

## REQUIRED EQUIPMENT ON BOARD

| | VESSEL 1 | | | | VESSEL 2 | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | Yes | No | Used | Unk | Yes | No | Used | Unk | |
| | [X] | [ ] | [X] | [ ] | [X] | [ ] | [ ] | [ ] | Personal Flotation Devices |
| | [ ] | [ ] | [ ] | [ ] | [X] | [ ] | [ ] | [ ] | Victim Wearing PFD |
| | [ ] | [ ] | [ ] | [ ] | [X] | [ ] | [ ] | [ ] | Fire Extinguishing Device |
| | [X] | [ ] | [ ] | [ ] | [ ] | [X] | [ ] | [ ] | Flame Arrestor |
| | [ ] | [X] | [ ] | [ ] | [ ] | [X] | [ ] | [ ] | Navigation (Lights, Shapes, Whistles, Foghorns, Bells, etc) |

## CONTRIBUTING FACTORS

| 1 | 2 | | 1 | 2 | |
| --- | --- | --- | --- | --- | --- |
| [ ] | [ ] | Excessive Speed | [ ] | [ ] | Fault of Hull |
| [ ] | [ ] | No Proper Lookout | [ ] | [ ] | Fault of Machinery |
| [ ] | [ ] | Operator Inattention | [ ] | [ ] | Fault of Equipment |
| [ ] | [ ] | Operator Inexperience | [ ] | [ ] | Wake |
| [ ] | [ ] | Negligent/Reckless Operation | [ ] | [ ] | Weather Conditions |
| [ ] | [ ] | Overloading | [ ] | [ ] | Hazardous Waters |
| [ ] | [ ] | Improper loading | [ ] | [ ] | Unknown |
| [ ] | [ ] | Alcohol Use | [ ] | [ ] | None Indicated |
| [ ] | [ ] | Drug Use | [ ] | [ ] | Other (Specify) |
| [ ] | [ ] | Fault of Other Person | | | |

## FIRST AID ADMINISTERED BY:
- [ ] Police
- [ ] Refused
- [ ] Fireman
- [X] None
- [ ] Ambulance Personnel
- [ ] Unknown
- [ ] Other (Specify)

Fatal: Could
**was swam** [ ] Yes [ ] No [ ] Unk

| TIME EMS REQUESTED: | INJURED TAKEN BY: | CHARGE - LIST SECTION |
| --- | --- | --- |
| 1921 | MSP Trooper 6 | [X] Yes _NR8-704/ 08.18.02.05L_ <br> [ ] No |

| EMS ARRIVED TIME: | INJURED TAKEN TO: | CHARGE - LIST SECTION |
| --- | --- | --- |
| 1935 | BALTIMORE SHOCK TRAUMA | 2 [ ] Yes _NR8-704/ 08.18.02.05L_ <br> [ ] No |

## DIAGRAM (Label the vessel(s) with their respective number: 1, 2, etc.)

SHOW NORTH BY ARROW

MD2852 BL

MD2855 BL

MARYLAND AMBULANCE INFORMATION SYSTEM   07/00

**DATE**

| Station Run Number | Jurisd Incident Number | Supl | Box Number | District | Receiving Facility: |
|---|---|---|---|---|---|

Other Units on Scene:

Response Location: 14348 Roberts Drive    Zip Code    Inc Type  Occup  Action  Disp

Patient Name: Richard Craft

Provider 1 ID Number: 2 1 6 5 7 6 8 8    Provider 1 Name: D h a n i e l l

Parent/Guardian:

Provider 2 ID Number: 2 1 7 7 0 3 5 5    Provider 2 Name: D u r k e l l

Patient Address: 14348 Roberts Drive

Provider 3 ID Number: 1 2 4 8 6 5 6 0    Provider 3 Name: M c I l m a r m i n

Home Phone: 648 5647

## DOCUMENTATION OF TIMES

| 911 Call | Amb Call | Dpt Sta | Arv Loc | Dpt Loc | Arv Hosp | Run End |
|---|---|---|---|---|---|---|

**RESPONSE IDENTIFICATION**  Cty  Unit  High Staff

**NO CARE RENDERED**
- PDOA
- Cancel
- False
- No Pt
- Refuse
- Unit 2

**RESPONSE IDENTIFICATION**
- IVT
- EMT-B
- CRT
- CRT-I
- EMT-P
- Other

**DISPATCH**
- ALS
- BLS
- 1st Due

**PRIORITY**
- One
- Two
- Three
- Four
- N/A

**PT. AGE**

**RACE**  Hispanic or Latino?
Mark all that apply
- American Indian or Alaska Native
- Native Hawaiian or Other Pacific Islndr
- Asian
- Black or African American
- White

**GENDER**  Male  Female

## FIRST VITALS

| SYS | DIA | PUL | RES |
|---|---|---|---|

**SIGNS/SYMPTOMS**
- Agitated
- Airway Obs
- Cyanotic
- Dehydrated
- Diaphoretic
- Hemorrhage
- Hypothermic
- Laceration
- Nausea
- Head
- Neck
- Back
- Paralysis
- Pupils
- Resp Distrs
- Syncope
- Vomiting
- Weakness
- Other

**Pain**
- Chest
- Abdm
- Extrm

**INJURY TYPE**
- ATV Crash
- Beating
- Bike
- Burn
- Drowning
- Fall
- GSW
- Industrial
- Lawn Mwr
- Motorcycle
- M V Crash
- Pedestrian
- Sport/Rec
- Stabbing
- Toxic Inhal
- Venom Bite
- Other

**CONDITIONS**
- Allergic Rxn
- Asthma
- Behavioral
- Cardiac Arst
- CHF
- COPD
- CVA
- Diabetes
- DNR
- Exposure
- GI Disorder
- Med. Illness
- MI/Cardiac
- OB/GYN
- Overdose
- Poison
- Resp Arst
- Seizures
- Other

**ECG**
- Nor Sinus
- Sinus Tach
- A-Fib
- SVT
- Sinus Brad
- Block  degree
- Asystole
- PEA
- PVC'S
- Vent Fib
- Vent Tach
- Other
- 3 Lead  12 Lead

**C/A**  WITNESSED
- Yes  No

**CPR START BY**
- Citizen  BLS
- 1st Resp  ALS

**AED START BY**
- Citizen
- 1st Resp
- BLS
- ALS

**MEDS**  P1 P2 P3
- Adenosine
- Albuterol
- Aspirin
- Assist Meds
- Atropine
- Benadryl
- Benzocaine
- Calcium
- Charcoal
- Dextrose
- Diazepam
- Dopamine
- Epi 1:10 K
- Epi 1:1 K
- Epi Nebulizer
- EpiPen

**MEDS**  P1 P2 P3
- Factor VIII or IX
- Furosemide
- Glucagon
- Glucose Paste
- Ipecac
- Lidocaine
- Lidocaine Gel
- Midazolam
- Morphine
- Na Bicarb
- Naloxone
- Nitroglycerin
- Succinylcholine
- Terbutaline
- Vecuronium

**CIRCULATION**  PROV#
- IV1
- IV2
- EJ
- IO

**OTHER CARE**
- CPR
- CPR Mech
- Cntrl Bld
- OB Delivery
- Other
- PASG.
- Restraint
- Spinal Imm
- Tract/Splnt

**HOSPITALS**

| | Consulting | Transferring | Receiving |
|---|---|---|---|

**LOC PTA**
- Y  N

**GCS**  E  M  V

**LUNGS**
- Normal
- Wheeze
- Rales
- Rhonchi

**Glucometer**

**SAFETY EQUIPMENT USED**
- Safety Seat  Airbag  Helmet
- Belt/Harn  None

## TRAUMA ID
- Shock
- Multi Sys
- Severe S Sys
- Pen Wnd
- CNS Injury
- Mechanism
- Other Fatal
- Age

**AIRWAY/VENTILATION**
- Suction  Orophar
- Nasophar  Face Mask
- N C  PPD
- NR Mask  Pulse Ox
- BVM  O2
- Mech Vent
- Hypervent  Other

**ROSC at ED**
- Yes  No

**PROV. EXP**

## MECHANISMS
- Deformity  Entrap  Speed
- Ejection  Fall > 3 X Height

## TRANSPORT BY
- No Transport
- This Unit
- Other Unit
- Other Air

**REASON HOSPITAL CHOSEN**
- Closest  Inter-facil trnsfr
- Spec Ref  Patient Choice
- Rerte-Alert  Routine Trnsprt
- Rerte-Consult

SaO2   ET SIZE  O2 LPM  TOTAL cc's   GLUCOSE   Gauge Site:

On-line Physician:

Provider Signature: Dhaniell qMB

## RADIO
- No Attempt
- Poor
- Good
- Failed

## SPECIAL PURPOSE
- Multi Pats Seen  Hazmat Call
- Multi Pats Trans  Addit Narr
- Exceptional Call
- Fire Rehab

Hospital Signature:

EMS Reviewed: Allison Deci EMS Chief

VAR A B C D E F G H I J

| PROV # | TIME | BP | PUL | RESP | RHYTHM | CARE PROVIDED | AMOUNT |
|---|---|---|---|---|---|---|---|

Pt. refusal Signed